## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

REPUBLICAN NATIONAL
COMMITTEE, REPUBLICAN PARTY OF
THE VIRGIN ISLANDS,

*Plaintiffs,*

v.

VIRGIN ISLANDS BOARD OF ELEC-
TIONS; CAROLINE F. FAWKES, in her
official capacity as the SUPERVISOR OF
ELECTIONS SYSTEM, VIRGIN ISLANDS,

*Defendants.*

CASE NO.: 2022-_____

ACTION FOR: CONSTITUTIONAL
CHALLENGE OF STATE STATUTE

## VERIFIED COMPLAINT

1.      Suppose a Virgin Islands law purported to prescribe a leadership structure for the American Legion or the Rotary Club—a law that dictated what leadership offices those groups must create, how many people could serve in those offices, and how those leaders must be chosen. Further suppose that the law required the American Legion or Rotary Club to get approval from a Virgin Islands government agency before they could change any of their internal processes, their leadership structure, or their governance rules—or gave that agency the power to veto any internal process or governance changes. Few people would seriously doubt that this hypothetical law would violate the American Legion's and Rotary Club's First Amendment right of association.

2.      But replace "American Legion" and "Rotary Club" with "political party," and that law moves from hypothetical to reality in the Virgin Islands. Provisions in the Virgin Islands Election Code purport to dictate the size, composition, methods for selecting, maximum terms of office for, and places and times of meetings for the *internal* party leadership of political parties

1

in the Virgin Islands. Worse yet, Virgin Islands law purports to give the Virgin Islands Board of Elections power to approve or veto the processes by which political parties select their internal party leaders.

3. Those laws do not implicate a political party's *external* responsibilities—that is, its role in selecting and nominating its candidates for public office. Instead, these laws regulate only a party's *internal* leaders, processes, governance, and structure.

4. Under unanimous U.S. Supreme Court precedent, those Virgin Islands laws facially violate the First Amendment rights of association of the Republican Party of the Virgin Islands ("VIGOP") and the Republican National Committee ("RNC"). In addition, the Virgin Islands Board of Elections and Virgin Islands Supervisor of Elections have applied those laws to the VIGOP and RNC in ways that only confirm the First Amendment violations. Indeed, ongoing party leadership disputes in the VIGOP arising from those laws' application to the VIGOP and RNC confirm the need for this Court's intervention to stop the continued infringement on their bedrock First Amendment freedoms to identify the persons who constitute their political association, to limit the association to those people only, to set the boundaries of their own association, to choose the structure that best allows them to pursue their political goals, and to make decisions free from governmental interference about the identity of (and the process for electing) their internal party leaders.

5. This Court should declare those provisions of Virgin Islands law unconstitutional on their face and as applied to the VIGOP and RNC, and should enjoin the Defendants from applying the challenged laws to Plaintiffs.

## JURISDICTION & VENUE

6.      This Court has subject-matter jurisdiction under 28 U.S.C. §§1331, 1343, and 2201 because Plaintiffs allege that provisions of the Virgin Islands Election Code violate their associational rights protected by the First Amendment to the United States Constitution.

7.      Venue is proper under 28 U.S.C. §1391(b) because Defendants reside in this district and because a substantial part of the events giving rise to these claims occurred in this district.

## PARTIES

8.      Plaintiff RNC is the national committee of the Republican Party as defined by 52 U.S.C. §30101(14). The RNC manages the business of the Republican Party throughout the United States at the national level, including by developing and promoting the party's national platform; supporting Republican candidates for public office at all levels of government; developing and implementing electoral strategies; educating, assisting, and mobilizing voters; raising funds to support the party's operations and candidates; and recognizing and coordinating with territorial and state-level party organizations and their officers who serve as RNC members.

9.      Plaintiff Republican Party of the Virgin Islands (VIGOP) is the officially recognized United States Virgin Islands affiliate of the Republican National Committee. Its Chairman is Gordon Ackley, its National Committeeman is Jevon O.A. Williams, and its National Committeewoman is Antoinette Gumbs-Hecht. The VIGOP is responsible for managing the affairs of the Republican Party in the Virgin Islands, electing candidates to territorial and federal office, and promoting the interests and policies of the Republican Party in the Virgin Islands. Its Chairman, National Committeeman, and National Committeewoman serve as RNC members. The VIGOP also plays a direct role in choosing the Republican Party's nominees for President and Vice Pres-

ident by electing delegates to serve at the Republican National Convention where those nominations occur.

10.     Defendant Virgin Islands Board of Elections is an agency of the U.S. Virgin Islands established by statute. 18 VIC §41(a). A single Board of Elections governs both election districts in the U.S. Virgin Islands (the districts of St. Croix and of St. Thomas/St. John). *See id.* The Board consists of 14 members, seven each from the election districts of St. Croix and St. Thomas/St. John. *Id.* §41(b). The Legislature of the Virgin Islands has vested the Board with the duty to "exercise all powers granted to, and perform all duties vested in, the board[] by" the Virgin Islands Election Code. *Id.* §47.

11.     Defendant Caroline F. Fawkes is the incumbent Supervisor of Elections System, Virgin Islands. The Supervisor of Elections is a statutorily created office within the Virgin Islands government. 18 VIC §4(a). The Supervisor of Elections is charged with administering and regulating the election laws of the U.S. Virgin Islands and is subject to the direction, control, and supervision of the Board of Elections. Among other statutory duties, the Supervisor of Elections is charged with administering certain provisions of the Virgin Islands Elections Code that implicate the internal affairs of political parties, including the methods and processes by which parties select their internal leaders and conduct their internal governance. 18 VIC §4(b). Defendant Fawkes is sued in her official capacity only.

## FACTUAL ALLEGATIONS

### The First Amendment forbids state regulation of political party internal affairs

12.     States cannot seem to resist injecting themselves into political parties' internal affairs. For at least half a century, political parties have had to fight time and again to prevent overbearing state legislatures and executive officers from doing so.

4

13.    Those efforts have resulted in a line of U.S. Supreme Court cases confirming that political parties have a First Amendment right of association that shields their internal decisions, governance structures, and processes—particularly for selecting their internal party leaders—from state control or oversight.

14.    As relevant here, the U.S. Supreme Court has held "[t]here can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments." *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973).

15.    That means that national political parties, their state-party affiliates, and their "adherents enjoy a constitutionally protected right of political association." *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975).

16.    "And the freedom to associate for the 'common advancement of political beliefs' necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981).

17.    Beyond that, a political party's "determination of the boundaries of its own association, *and of the structure which best allows it to pursue its political goals*, is protected by the Constitution." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 224 (1986) (emphasis added).

18.    "Freedom of association also encompasses a political party's decisions about *the identity of, and the process for electing, its leaders*." *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989) (emphasis added).

## *Eu* struck down California laws that violated political parties' First Amendment associational rights by regulating their internal affairs

19.     *Eu*—the U.S. Supreme Court's most recent decision on these questions—plainly explains why those bedrock freedom-of-association rules require invalidating as inconsistent with the First Amendment any state or territorial laws that interfere with a party's choice over the processes, methods, or timing for selecting its internal party leaders or its governance structure.

20.     In the Court's words, *Eu* resolved political parties' First Amendment challenges to California laws that "regulate[d] their internal affairs." 489 U.S. at 218.

21.     Some of the challenged California statutes "dictate[d] the size and composition of the state central committees." *Id.*

22.     Some of the challenged statutes "set forth rules governing the selection and removal of committee members." *Id.*

23.     Other challenged statutes "fix[ed] the maximum term of office for the chair of the state central committee." *Id.*

24.     California even passed laws that tried to "require that the [state party] chair rotate between residents of northern and southern California." *Id.*

25.     And finally, as relevant here, California law purported to "specify the time and place of committee meetings." *Id.*

26.     Writing for a unanimous Court, Justice Marshall's opinion affirmed the Ninth Circuit's judgment holding that the challenged California statutes clearly violated political parties' First Amendment associational rights. *See id.* at 229-33.

27.     According to the Court, "California's restrictions on the organization and composition of official governing bodies, the limits on the term of office for state central committee

chair, and the requirement that the chair rotate between northern and southern California . . . directly implicate[d] the associational rights of political parties and their members." *Id.* at 229.

28.     The challenged laws "burden[ed]" the parties' First Amendment rights to determine "'the structure which best allows [them] to pursue [their] political goals'" and to make "decisions about the identity of, and the process for electing, [their] leaders." *Id.* at 229-30.

29.     "By requiring parties to establish official governing bodies at the county level, California prevent[ed] the political parties from governing themselves with the structure they think best." *Id.* at 230.

30.     "And by specifying who shall be members of the parties' official governing bodies, California interfere[d] with the parties' choice of leaders."*Id.*

31.     "A [California political] party might also decide that the state central committee chair needs more than two years to successfully formulate and implement policy. The Code prevent[ed] such an extension of the chair's term of office." *Id.*

32.     "A party might find that a resident of northern California would be particularly effective in promoting the party's message and in unifying the party. The Code prevent[ed] her from chairing the state central committee unless the preceding chair was from the southern part of the State."*Id.*

33.     Each of those California restrictions "thus limit[ed] a political party's discretion in how to organize itself, conduct its affairs, and select its leaders." *Id.* And the "associational rights" implicated in *Eu* "are much stronger" than those in other Supreme Court cases because they implicated party members' rights to associate "with one another in freely choosing their party leaders." *Id.* at 230-31.

34.     None of the challenged California laws served a compelling state interest. None of those laws were "necessary to ensure that elections are fair and honest" because those laws did not "impose certain eligibility requirements for voters in the general election" or constitute "restrictions that promote the integrity of primary elections" for the party's general-election candidates. *Id.* at 231.

35.     Prior cases had rejected First Amendment challenges to state laws that imposed those kinds of restrictions because the resulting "infringement on the associational rights of the parties and their members was the indirect consequence of laws necessary to the successful completion of a party's *external responsibilities* in ensuring the order and fairness of elections." *Id.* at 232 (emphasis added).

36.     The unconstitutional California laws, in contrast, constituted "direct regulation of a party's leaders." *Id.* at 231-32. And directly regulating a party's "internal party governance" was flatly unconstitutional because it was not "necessary to the integrity of the electoral process." *Id.* at 232. For "the State has no interest in protecting the integrity of the Party against the Party itself," *id.* (cleaned up), and "cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure," *id.* at 233.

37.     "In sum, a State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure an election that is orderly and fair." *Id.*

### Virgin Islands Election Code provisions duplicate the unconstitutional California provisions invalidated in *Eu*

38.     Despite the Supreme Court's holdings in *Eu*, the Legislature of the Virgin Islands has adopted provisions in its Election Code that likewise purport to vest in the Board of Elections or the Supervisor of Elections the very same unconstitutional power to "direct[ly] regulat[e]" "a party's leaders," *id.* at 231-32—and to exercise supervisory control over "internal party gover-

nance" that is not "necessary to the integrity of the electoral process," *id.* at 232—that doomed California's virtually identical regulations.

39.     Like some of California's election code provisions struck down in *Eu*, parts of the Virgin Islands Election Code purport to "dictate the size and composition of the state central committees." 489 U.S. at 218.

a.  Section 303(a) requires "[e]ach political party in the Virgin Islands" to "have a territorial committee which shall be comprised of thirty (30) elected members." 18 VIC §303(a).

b.  It further specifies the number of territorial committee seats to be assigned to different locations in the Virgin Islands: It requires "eight (8) members from the election district of St. Thomas-St. John, six (6) of whom shall reside on St. Thomas and two (2) of whom shall reside on St. John," coupled with "six (6) members from the election district of St. Croix," and "sixteen (16) at large members, of whom not less than seven (7) shall reside on St. Croix and not less than seven (7) shall reside on St. Thomas." 18 VIC §303(a)(1)-(3).

c.  Section 303(b), in turn, requires the territorial party committee to contain "such ex officio members as provided by party rules, but not to exceed twenty (20) voting ex officio members," all of whom must "have such powers and duties as set forth in the party rules." 18 VIC §303(b).

40.     Like some of California's election code provisions struck down in *Eu*, parts of the Virgin Islands Election Code purport to "set forth rules governing the selection and removal of committee members." 489 U.S. at 218. In fact, the Virgin Islands Election Code contains at least

seven provisions purporting to limit a party's ability to decide how and when it will choose its internal party leaders:

    a.  Perhaps most troubling, §232 requires a political party to get the Board of Elections' approval of its process for selecting internal party leaders or risk having those processes later deemed invalid: "The Board of Elections will be responsible for certifying the process to be used by any political party *to select party officers* and candidates for public office." 18 VIC §232 (emphasis added).

    b.  Section 301(a) then requires a political party to "elect the members of its territorial committee and such other party officers as its rules provide, by a vote of the electors enrolled as members of the party *at the primary election* in accordance with the provisions of this title." 18 VIC §301(a) (emphasis added).

    c.  Section 342 further emphasizes the primary-election requirement for internal party officers who are *not* committee members: "Except as provided in section[] 307 … candidates for party offices which, under this title, are required to be elected by the party electors, *shall be elected, at primary elections held in accordance with the provisions of this title and in no other manner*." 18 VIC §342 (emphasis added).

    d.  Section 305 continues the theme: it specifies that "[t]he members of all other party committees, and all other party officers, whose election is required by the party rules, *shall be elected at the primary in the manner provided by this title*," including a party's "national committeeman," "na-

tional committeewoman," "state chairman," and "district chairman each for the islands of St. Croix, St. John and St. Thomas." 18 VIC §305 (emphasis added).

e.  Section 303(c) requires political parties to let their enrolled members vote at a primary election "for members of the territorial committee up to the number at large and for the election district in which he registered to vote." 18 VIC §303(c).

f.  Section 306 prescribes rules for deciding how candidates for internal party office will win the primary electionsrequired by §§301(a), 305, and 342: Candidates "for party offices who receive a plurality of the votes of the party electors at a primary election shall be declared elected," and any tie vote will be decided by "cast[ing] lots before the Supervisor of Elections." 18 VIC §306(a), (b).

g.  Section 307 gives the Supervisor of Elections power to forgo a primary election for internal party office if "the number of candidates who filed nomination petitions for a particular party office exactly equals the number of persons who are to be elected to such office," and to declare the filed candidates to be the winners. 18 VIC §307.

41.    Like some of California's election code provisions struck down in *Eu*, parts of the Virgin Islands Election Code purport to "fix the maximum term of office for" internal party officials. 489 U.S. at 218.

a.  Section 303(c) provides that members of the territorial committee "shall serve for two (2) years." 18 VIC §303(c).

11

      b.  Section 305 provides that the "state chairman" and "a district chairman each for the islands of St. Croix, St. John, and St. Thomas ... shall serve for two (2) years," and that the national committeeman and national committeewoman will also serve for two years (unless the party's rules allow them to serve for four years). 18 VIC §305.

42.    Like some of California's election code provisions struck down in *Eu*, parts of the Virgin Islands Election Code purport to "specify the time and place of committee meetings." 489 U.S. at 218.

      a.  Section 304(a) requires "[t]he members of the territorial committee" to "meet for organization within 10 days following the primary, at such hour and place as shall be designated by the territorial chairman of each political party; provided, however, that the Supervisor of Elections shall designate the hour and place of the organization meeting of the first territorial committee of each party." 18 VIC §304(a).

43.    Beyond those provisions, the Virgin Islands Election Code also purports to manage political parties' internal affairs in two ways that even California did not try.

44.    First, §304(a) purports to make internal party rules of no effect "until a certified copy" of its rules adopted during its central committee meeting "has been filed in the office of the Supervisor of Elections." 18 VIC §304(a).

45.    Second, §301 purports to give the chairman and secretary of the territorial affiliate of a national political party the right to control the use of the "symbol, emblem, or insignia" of "the national party, convention, committee or organization." §301(c). Those two territorial party officers "may certify to the Supervisor of Elections at least twenty-eight (28) days prior to an

election the emblem or emblems of such national party with which it is affiliated and such certification shall be prima facie evidence of such emblem or emblems of such national party." §301(d). The territorial officers and the Supervisor of Elections then have the right to file a "petition for an injunction to restrain" anyone else "from using such symbol, emblem, or insignia." §301(c).

## Those Virgin Islands Elections Code provisions have caused substantial harm to the RNC, to the VIGOP, and to Republican voters in the Virgin Islands

46.     The Virgin Islands' unconstitutional attempts to control the internal affairs of political parties have caused harm to the RNC, to the VIGOP, and to Republican voters in the Virgin Islands.

47.     Because of those unconstitutional laws, the internal party leadership and governance of the RNC's territorial affiliate have been subject to a seemingly unending series of disputes since at least 2016.

48.     The RNC has repeatedly tried to work with Defendant Board of Elections, Defendant Fawkes, and Republican voters of the Virgin Islands—including with the Republican voters involved in those local party leadership disputes—to resolve those purely internal affairs. But the Virgin Islands' unconstitutional laws have severely impeded the RNC's ability to do so.

49.     As described in greater detail below, Defendants Board of Elections and Supervisor Fawkes have invoked the unconstitutional Virgin Islands laws to try to supervise, to refuse to recognize, or to impede the RNC's and VIGOP's constitutionally protected efforts (1) to identify the leaders of the VIGOP, who in turn are members of the RNC; (2) to exercise their discretion over how the VIGOP organizes itself and affiliates with the RNC; and (3) to implement a structure for the VIGOP that best allows the VIGOP and RNC to pursue their common political goals.

50.     Some of the former officers of the VIGOP have also invoked the unconstitutional Virgin Islands laws to those same ends. In fact, former VIGOP officers have named the RNC as a defendant in a lawsuit in the Virgin Islands Superior Court that seeks to abridge the VIGOP's and RNC's First Amendment right of association based on claims arising from the unconstitutional Virgin Islands laws.

51.     Those ongoing internal political-party disputes have harmed Republican voters in the Virgin Islands in at least two ways. First, they prevented the RNC from seating Republican party officials from the Virgin Islands as part of the RNC itself during the 2020 presidential nomination process. That resulted in Republican voters in the Virgin Islands lacking representation on the RNC—the national party's chief policymaking and governance body—while the RNC performed the critical functions of choosing the Republican nominees for President and Vice President, electing officers, choosing members to serve on and chair committees, adopting amendments to the GOP Rules, approving Resolutions, and changing from an unincorporated association to a member-governed corporation. Republicans in the Virgin Islands did not participate in those functions because Defendants Board of Elections and Supervisor Fawkes, and former VIGOP officers, have invoked Virgin Islands law to preclude the VIGOP and RNC from effectively and efficiently resolving these internal party disputes. Second, claims by the former VIGOP officers that they remain current VIGOP officers—despite the results of an intervening and duly called party-officer election—have led to confusion about that election's validity and about the identity of the party officers duly recognized by the RNC and by Defendants. That harms the VIGOP's ability to recruit and support candidates for office, to raise funds, and to otherwise garner support and engagement from Republican voters.

14

**Under the RNC's rules, certain state party officers serve as members of the RNC**

52.    An understanding of how those internal party disputes have harmed the RNC, VIGOP, and Republican voters on the Virgin Islands becomes plain in light of the RNC's purpose and structure.

53.    The RNC has "general management" of the national Republican Party based on the rules the RNC adopts. Rules of the Republican Party, Rule No. 1(a), https://bit.ly/3PXcQx7 (GOP Rules).

54.    Among other things, those Rules establish who is eligible to be seated as a member of the RNC.

55.    Specifically, the RNC consists of three elected party officers from each state and territory: "one (1) national committeeman and one (1) national committeewoman from, and the chairman of the state Republican party of, each state" and territory. GOP Rule No. 1.

56.    Those three state party officers also participate in the Republican National Convention to nominate the Republican candidates for President and Vice President of the United States. GOP Rule No. 14(a)(2).

57.    Before each Republican National Convention, each state Republican Party chairman must "submit the names of the elected national committee members to the secretary of the convention" for the full national convention to "ratif[y]." GOP Rule No. 2(b).

58.    National committeemen and national committeewomen serve in those internal party offices "from the adjournment of the national convention until the adjournment of the following national convention." GOP Rule No. 3(a). That's a period of roughly four years.

59.    A state party chairman, in turn, serves as an RNC member "during his or her term in office" as long as he or she is "duly elected." GOP Rule No. 3(b). And as a private organiza-

tion, the RNC and its internal committees retain the protected First Amendment right to remove their members. *See* GOP Rule No. 7(a) (providing that Robert's Rules of Order "shall govern in all committee meetings of the Republican National Committee and its committees insofar as they are applicable and not inconsistent with these rules"); Rule No. 61.1, Robert's Rules of Order, Newly Revised (12th ed.) ("Although ordinary societies seldom have occasion to discipline members, an organization or assembly has the ultimate right to make and enforce its own rules."); *Id.* Rule 61.2 ("Punishments that a society can impose generally fall under the headings of censure, fine (if authorized in the bylaws), suspension, or expulsion.").

60.     Besides holding national conventions to nominate the party's candidates for President and Vice President of the United States, the RNC meets at least twice per year. GOP Rule No. 8(a). One of those meetings happens within five days after the Republican National Convention ends. GOP Rule No. 8(b). At that meeting, known as the "organizational meeting," the RNC orients new members and lays the groundwork for conducting party business until its next national convention.

### Because of Defendants' actions in 2016, no officers from the VIGOP participated in the RNC's 2016 organizational meeting

61.     Defendant Board of Elections took actions in 2016 based on the Virgin Islands election laws challenged here that precipitated an internal party leadership dispute in the VIGOP and resulted in a vacancy for the offices of national committeeman and national committeewoman from the Virgin Islands. That resulted in no one from the Virgin Islands participating in the RNC's organizational meeting following the 2016 Republican National Convention.

62.     In March 2016, Defendant Board of Elections voted to hold primary elections only for public offices and to compel political parties to hold elections for their internal party offices.

63.    In May 2016, Board of Elections Chairman Arturo Watlington Jr. notified political parties via letter that elections for party office would not be held at the primary election and that each political party was free to develop and determine the process by which it would elect its various party officers and officials. *See Ackley v. Fawkes*, No. ST-2020-CV-0021, 2020 IV Super 66U, at 14.

64.    Based on that letter, the VIGOP decided to elect its party leaders by a vote of Republican voters at a party convention.

65.    As required by 18 VIC §232, the VIGOP submitted its convention plan to Defendant Board of Elections for approval.

66.    Despite Chairman Watlington's May 2016 letter, in June 2016 Defendant Board of Elections voted *not* to certify the VIGOP's convention plan.

67.    After the Board disapproved the VIGOP's convention plan, dueling groups of Republican voters claimed to be the rightful leadership of the VIGOP. One group was led by Mr. John Canegata; the other was led by Mr. Warren B. Cole.

68.    In July 2016, the RNC brokered a settlement agreement between Mr. Canegata and Mr. Cole. In that agreement, Mr. Canegata and Mr. Cole agreed that a new party leadership caucus or convention would be held in the Virgin Islands, at which new elections for national committeeman, national committeewoman, and chairman of the VIGOP would occur.

69.    On August 13, 2016, the VIGOP held a territorial party leadership caucus to elect those three new officers in accordance with the RNC-brokered settlement agreement. At that caucus, Mr. Canegata was elected to a two-year term as VIGOP chairman, Ms. Lilliana Belardo de O'Neal was elected to serve as national committeewoman until the adjournment of the next

Republican National Convention, and Mr. Jevon O.A. Williams was elected to serve as national committeeman until the adjournment of the next Republican National Convention.

70.     There is no evidence that Defendant Board of Elections ever certified under 18 VIC §232 the VIGOP's plan to hold the August 2016 party leadership caucus. But Judge Mackay of the Superior Court of the Virgin Islands suggested that this caucus was valid. *See Ackley v. Fawkes*, No. ST-2020-CV-0021, 2020 IV Super 66U, at 14 (noting that "VIGOP conducted a caucus in August 2016 with approval from the" RNC after Defendant Board of Elections said that "each political party was … free to develop the process by which it will elect party officers and officials"). And the Board and Defendant Fawkes did recognize these party officers. Then in January 2017, the RNC recognized the election of Mr. Canegata and ratified the elections of Ms. Belardo de O'Neal and Mr. Williams. The RNC later notified Defendant Fawkes about that ratification. The RNC did not receive a response from Mr. Fawkes raising any objections or concerns about the caucus.

### VIGOP leadership irregularities in 2018

71.     Under the VIGOP's rules, Mr. Canegata's election in 2016 as VIGOP chairman should have lasted for two years—or until 2018—when a new election for state party chairman should have occurred. *See* 2016 VIGOP Rules (attached as Ex. A).

72.     But at some point after Mr. Canegata's 2016 election, the VIGOP's rules apparently were changed to purportedly extend the chairman's term from two to four years.

73.     Mr. Canegata has since argued that this means that he was not up for reelection in 2018, and thus that no VIGOP caucus was necessary in 2018.

74.     Consistent with Mr. Canegata's position on the purported rules changes that he claims extended his leadership term, there is no evidence that an election for VIGOP chairman-was held in 2018.

### VIGOP leadership irregularities in 2020 prevent the seating of some Virgin Islands dele-gates at the 2020 Republican National Convention

75.     The purported extension in 2018 of Mr. Canegata's chairmanship to four years (or through 2020) led to another internal VIGOP leadership dispute in 2020. This dispute resulted in Virgin Islands Republicans ultimately being deprived of representation at the 2020 Republican National Convention to nominate candidates for President and Vice President of the United States.

76.     On May 6, 2020, then-VIGOP Secretary Robert Max Schanfarber submitted to Defendant Fawkes a plan to cancel the 2020 primary election required by 18 VIC §342. As Judge Mackay found, "there is no evidence that the party plan set forth in the 2020 Caucus Rules was approved by a vote of the VIGOP party officers during the 2020 election cycle." *Ackley v. Fawkes*, No. ST-2020-CV-0021, 2020 IV Super 66U, at 15.

77.     Two days later, a group of Republican voters in the Virgin Islands sued Mr. Ca-negata and his leadership team in Virgin Islands Superior Court to try to keep Defendant Board of Elections from canceling the primary, and to keep Mr. Canegata and his leadership team from conducting any party process that would take the place of the required primary. *See generally Ackley v. Fawkes*, Case No. ST-2020-CV-00201 (V.I. Super. Ct.).

78.     Four days after that was the deadline for candidates seeking a nomination for a public or a party office in the primary election to file their candidacy paperwork. Two of the plaintiffs in the Virgin Islands Superior Court complaint and Mr. John Yob were the only candi-dates to file for VIGOP party office by that deadline.

79.     In the meantime, the suit against Mr. Canegata was removed to federal district court in the Virgin Islands but then remanded to Superior Court. The Superior Court judge eventually denied the plaintiffs' request for a preliminary injunction on June 4. *See Ackley*, Case No. ST-2020-CV-00201, 2020 VI Super 66U. And two months later, the Superior Court issued an injunction against the plaintiffs under 18 VIC §301(c) preventing them from using the RNC elephant logo and from holding themselves out as officers of the VIGOP.

80.     While those Superior Court proceedings were pending, Defendant Board of Elections continued its own processes. As relevant here, on June 13, 2020, Defendant Board of Elections invoked 18 VIC §232 to approve the use of a caucus to elect VIGOP officers.

81.     Mr. Canegata later contended that a caucus was held on July 18, 2020, in accordance with the Board-approved plan. He also contended that at the caucus, he was reelected as VIGOP chairman, Ms. Belardo de O'Neal was reelected as national committeewoman, and Mr. Schanfarber was elected as national committeeman.

82.     As a private association, the RNC is entitled to determine its own membership, including by setting its own processesfor resolving disputes about the eligibility and qualifications of its members and convention delegates elected to serve at the National Convention, which include the three RNC members from each state or territory. GOP Rules No. 3, 7, 14(a)(2), 23, 24. Those processes are protected by the First Amendment.

83.     The people who had unsuccessfully sued Mr. Canegata in Superior Court—and who had timely filed for party office under the primary-election deadline—invoked those processes and filed a delegate contest with the RNC Committee on Contests in August 2020. During that contest, Mr. Canegata was unable to produce evidence to the RNC Committee on

Contests supporting his claim that a caucus was held on July 18 or that the results were as previously reported.

84.     That delegate contest ended with the RNC Committee on Contests voting on August 10, 2020, to adopt a report recommending that the RNC not seat any delegates from the Virgin Islands during the 2020 Republican National Convention except for National Committeewoman Belardo de O'Neal and National Committeeman Williams.

85.     Dissatisfied with that decision, Mr. Canegata filed an appeal, which the RNC Contests Committee considered in Charlotte, North Carolina and voted on August 21, 2020, to uphold its initial report.

86.     The next day, the full RNC voted not to recognize *any* members from the Virgin Islands unless and until a new VIGOP leadership election were held and overseen by the RNC Counsel's Office.

87.     The effect of that vote on Mr. Canegata was immediate because the RNC determined that Mr. Canegata was no longer the "duly elected" chairman of the VIGOP as required for Mr. Canegata to be an RNC member under GOP Rule No. 3(b). Ms. Belardo de O'Neal and Mr. Williams continued to be recognized by the RNC as National Committeeman and Committeewoman until the expiration of the terms to which they had been elected in 2016, which occurred upon the adjournment of the 2020 National Convention.

88.     The day after that, the RNC Convention Committee on Credentials met in Charlotte and affirmed the report of the RNC Committee on Contests with respect to the Virgin Islands delegates.

89. The next day, the delegates to the Republican National Convention voted to ratify the national committeemen and national committeewomen in accordance with GOP Rule No. 2(b). No one from the Virgin Islands was ratified.

90. As a result, Republican voters in the Virgin Islands had reduced representation at the 2020 Republican National Convention where the Republican candidates for President and Vice President of the United States were nominated.

**The RNC spends more than a year trying to schedule a caucus to elect new VIGOP officers**

91. To ensure that Virgin Islands Republicans could once again participate as members of the RNC as quickly as possible, the RNC Counsel's Office emailed both sides of the 2020 delegate contest within weeks after the 2020 Republican National Convention to propose a method for moving forward with a new election for internal party officers in accordance with the full RNC's vote.

92. Shortly thereafter, on September 25, 2020, the RNC Counsel's Office sent a letter to Defendant Board of Elections. The letter reiterated the RNC's understanding at that time that political parties in the Virgin Islands may conduct party-run processes to select their own internal party leaders with input from the Board of Elections. The letter also outlined the RNC Counsel's Office plan (in accordance with the full RNC's vote) to hold a new caucus to elect new internal party leaders.

93. Defendant Board of Elections responded to the RNC Counsel's Office by letter dated October 6, 2020. In that letter to the RNC, Board Chairman Raymond Williams stated that the Board had "accepted the results of the 2020 United States Virgin Islands GOP Caucus held on Saturday, July 18, 2020 which completed the Board['s] legal mandate as required by Virgin Islands law. The Board will not consider any other request for review or certification."

94.     In December 2020, the RNC Counsel's Office twice emailed Mr. Canegata to discuss holding a new caucus to elect internal party officers. Mr. Canegata never responded to those emails.

95.     In January 2021, the RNC Counsel's Office held a conference call with Mr. Canegata, his attorney, and others to discuss a plan whereby the VIGOP would adopt changes to its Rules to authorize a new election for VIGOP chairman, national committeeman, and national committeewoman. The RNC Counsel's Office emphasized that the exact terms for the election would be agreed to by both sides of the delegate contest, with the Counsel's Office taking lead on drafting the bylaws amendment and the call to caucus containing specific details of the election.

96.     A few days after that conference call, the RNC Counsel's Office sent drafts of the bylaw amendments to Mr. Canegata. He never responded.

97.     During the next three months—from February to April 2021—Mr. Canegata, Ms. Belardo de O'Neal, and Mr. Canegata's attorney ignored repeated attempts by the RNC Counsel's Office to contact them.

98.     In April 2021, Mr. Canegata's attorney sent a letter to the RNC's General Counsel asking the RNC to reconsider its 2020 decision not to recognize any RNC members from the Virgin Islands until a new election could be held. In response, the RNC's General Counsel explained the RNC's authority for its decision under the GOP Rules and urged Mr. Canegata to cooperate with holding a new caucus.

99.     In late July 2021, the RNC Counsel's Office held yet another conference call with Mr. Canegata to again discuss holding a new caucus to elect new internal party leaders. Shortly thereafter, the RNC Counsel's Office sent new draft amendments and related documents to Mr.

Canegata, who eventually acknowledged receiving them but never offered substantive feedback or comments on the drafts.

100.    Between August 16 and September 14, 2021, the RNC Counsel's Office tried to reach Mr. Canegata five different times to follow up on the plan for a new caucus. He never responded.

### On threat of RNC disaffiliation from the VIGOP, Mr. Canegata finally responds to the RNC and cooperates in holding a new leadership caucus under the RNC's direction

101.    After more than a year of Mr. Canegata's ignoring its inquiries, the RNC could no longer abide Mr. Canegata's unresponsiveness. So on December 30, 2021, the RNC informed Mr. Canegata that unless he directed the VIGOP secretary to issue a new call to caucus in the next week, the RNC would disaffiliate from the VIGOP and hold elections through a new territorial party committee.

102.    A week later, on January 6, 2022, Mr. Schanfarber (who had been acting as VIGOP secretary) issued a call for a meeting of the VIGOP state committee to be held on January 22, 2022, to authorize a new party leadership caucus. Schanfarber issued the call through email and posted it to the VIGOP's website, www.usvigop.org.

103.    That meeting occurred as scheduled on January 22. During the meeting, the VIGOP committee unanimously adopted a bylaw amendment authorizing the 2022 caucus to elect a chairman, national committeeman, national committeewoman, and members of the state committee and thereafter immediately adopted caucus rules ("2022 Caucus Rules") to govern that process. As part of that vote, the VIGOP delegated responsibility for administering the caucus to the RNC Counsel's Office. During the meeting, the committee also expressed its desire to hold the new party leadership caucus on March 29, 2022.

104.    On February 16, 2022, Mr. Canegata notified Defendant Board of Elections of the March 29, 2022, VIGOP party leadership caucus.

105.    On February 18, 2022, the RNC, in accordance with the 2022 Caucus Rules, issued a call to caucus notifying Republican voters in the Virgin Islands of the March 29 caucus to elect a VIGOP chairman, national committeeman, national committeewoman, and state committee members. The RNC posted the call to the website vicaucus.gop and published it in various Virgin Islands newspapers from February 24 to March 29. Mr. Schanfarber also posted it to the VIGOP's website starting on February 26.

106.    On March 4, 2022, Defendant Board of Elections met and discussed Mr. Canegata's February 16 letter. The Board did not take any action at this meeting.

107.    On March 9, 2022, Board of Elections Chairman Williams responded to Mr. Canegata, asking for details about the party leadership caucus.

108.    The filing deadline for candidates interested in seeking office at the caucus was March 15, 2022. Mr. Canegata, Ms. Belardo de O'Neal, and Mr. Schanfarber did not file to become candidates by this deadline.

109.    On March 22, 2022, the RNC sent a caucus plan to Defendant Board of Elections, along with a letter explaining the party's First Amendment right to choose its internal party leaders using its own preferred processes. The letter further explained how the March 29 party leadership caucus was both a proper exercise of the VIGOP's First Amendment right and consistent with Virgin Islands law.

110.    On March 26, 2022, Defendant Fawkes emailed the RNC Counsel's Office questioning the RNC's ability to verify voter registration dates for caucus voters and asked the RNC

to submit an updated voter file request so that the file would also include a voter's registration date.

111.    The RNC Counsel's Office updated the request accordingly, but neither Defendant Fawkes nor anyone from her office ever provided a voter file containing those voter registration dates to the RNC Counsel's Office.

112.    On March 27, 2022—two days before the party leadership caucus—Mr. Canegata emailed Republican voters in the Virgin Islands attacking the candidates who had filed for internal party offices by the March 15 deadline, and urging Republicans to write in votes for him, Ms. Belardo de O'Neal, and Mr. Schanfarber.

113.    On March 29, the party leadership caucus occurred as scheduled, and was administered by the RNC Counsel's Office. Voter eligibility information was verified using the online voter look-up feature on the Election System of the Virgin Islands website and the issuance date displayed on voter registration cards.

114.    The next day, the RNC Counsel's Office counted, canvassed, and certified the party leadership caucus results. Mr. Gordon Ackley was elected as the chairman of the VIGOP, Ms. Antoinette Gumbs-Hecht was elected as national committeewoman, and Mr. Jevon Williams was elected as national committeeman. Candidates were also elected and certified for 20 state committee seats. The RNC Counsel's Office posted those results on vicaucus.gop and emailed the results to over 250 Republican contacts in the Virgin Islands.

115.    On April 4, 2022, the RNC sent a letter certifying the party leadership caucus results to Defendant Board of Elections.

116.    On April 5, 2022, new VIGOP chairman Gordon Ackley sent a letter to Defendant Fawkes certifying the party leadership caucus results.

117.   On April 6, 2022, Defendant Board of Elections met in Executive Session to discuss what to do about the party leadership caucus.

118.   Upon returning from Executive Session, the members voted to refer the matter to the Virgin Islands Attorney General.

119.   On April 7, 2022, VIGOP Chairman Gordon Ackley held a meeting to organize the VIGOP under the direction of the newly elected internal party officers.

120.   Neither the RNC nor the VIGOP has since heard anything from Defendant Board of Elections, Defendant Fawkes, or the Virgin Islands Attorney General about the March 29 party leadership caucus.

121.   On April 14, the full RNC exercised its First Amendment right of association to identify who constitutes its membership and voted to ratify the elections of Mr. Ackley, Ms. Gumbs-Hecht, and Mr. Williams.

122.   Also on April 14, the RNC issued an exclusive license to the VIGOP under Mr. Ackley's leadership to use the RNC's federally registered trademarks. Those include its trademarks in the terms "RNC," "Republican National Committee," "GOP," and various elephant logos.

123.   On April 15, the RNC notified Defendant Fawkes by letter that the RNC had ratified the elections of Mr. Ackley, Ms. Gumbs-Hecht, and Mr. Williams.

**More leadership disputes and lawsuits follow the March 29 party leadership caucus**

124.   Though Defendants have not communicated with the RNC or the VIGOP about the March 29 party leadership caucus, former VIGOP officers have been anything but silent.

125.   On April 8, Mr. Canegata, Ms. Belardo de O'Neal, and Mr. Schanfarber filed a lawsuit in the Virgin Islands Superior Court against Mr. Ackley, Ms. Gumbs-Hecht, and Mr.

Williams, invoking (among other things) 18 VIC §301(c)-(d) to prevent defendants from using the RNC's trademarks.

126.    In a since-filed amended complaint in the Virgin Islands Superior Court, those former VIGOP officers added the RNC itself as a defendant. Among other things, the allegations against the RNC invoke Virgin Islands law in ways that, if successful, would infringe the RNC's First Amendment right to define the scope of its membership and its right of association.

127.    On April 10, 2022, Mr. Schanfarber emailed a notice to Republicans in the Virgin Islands on behalf of Mr. Canegata announcing a "regular meeting" of the Republican state committee for April 13, 2022. It is unclear whether any purported meeting of the VIGOP occurred on April 13 under Mr. Canegata's supervision.

128.    On April 13, 2022, the RNC sent a cease-and-desist letter to Mr. Canegata, with copies to his attorney, revoking Mr. Canegata's license to use any RNC federally registered trademarks.

129.    On April 18, 2022, Mr. Canegata's lawyer responded to the RNC's cease-and-desist demand with his own letter indicating that he viewed the cease-and-desist demand as the practice of law in the Virgin Islands, and stating that he was referring the RNC's lawyers to the Virgin Islands Attorney General for the unlicensed practice of law.

130.    On April 20, 2022, Mr. Kevin D'Amour, a Virgin Islands-licensed lawyer, sent a cease-and-desist demand to Mr. Schanfarber reiterating that the RNC had revoked all licenses or other rights for him or Mr. Canegata to use RNC-owned federal trademarks. Mr. Schanfarber has never responded to this letter.

131.    On the VIGOP's website, Mr. Canegata and Mr. Schanfarber continue to hold themselves out as officers of the VIGOP. And the Virgin Islands' Election System website con-

tinues to identify Mr. Canegata as the VIGOP Chairman. *See* Election System of the Virgin Islands, Political Parties, https://www.vivote.gov/political-parties (last visited July 13, 2022).

132.    Mr. Canegata also continues to raise and spend funds from donors all over the United States using a political action committee registered with the Federal Election Commission under the name of "Republican Party of the Virgin Islands" (also known as the "VIGOP PAC"). Between January 1, 2021 and June 30, 2022, the VIGOP PAC raised nearly $734,000 in contributions.[1] Those contributions have come from individuals in 43 states. And during the same period, VIGOP PAC also spent nearly $759,000 in disbursements.[2]

133.    Given Mr. Canegata's and Mr. Schanfarber's continued refusal to cease and desist their unlawful and unauthorized use of the RNC's name and trademarks, the RNC was forced to file a trademark infringement lawsuit against them and the VIGOP PAC in federal district court in the Virgin Islands. *See Republican Nat'l Comm. v. Canegata*, No. 3:22-cv-00037-RAM-RM (D.V.I.).

134.    On June 8, 2022, the Court held a hearing on the RNC's motion for a preliminary injunction to stop the unauthorized and unlawful use by Mr. Canegata, Mr. Schanfarber, and the VIGOP PAC of the RNC's federally registered trademarks. During that hearing, Mr. Canegata testified that he still considers himself to be the duly elected chairman of the VIGOP; that he was unaware of the RNC's refusal to recognize him as the duly elected VIGOP chairman in 2020; and that he was unaware that the RNC had ratified the elections of Mr. Ackley, Ms. Gumbs-Hecht, and Mr. Williams.

---

[1]    FEC,    VIGOP    Financial    Summary    (last    visited    July    28,    2022), https://www.fec.gov/data/committee/C00553560/?tab=summary.

[2]    FEC,    VIGOP    Spending    (last    visited    July    28,    2022), https://www.fec.gov/data/committee/C00553560/?tab=spending

135.    The long-running disputes described above about who the VIGOP's internal party leaders are—and thus also about who can properly serve as members of the RNC—would not exist but for the challenged provisions of the Virgin Islands Elections Code, and for efforts by Defendants Board of Elections and Supervisor Fawkes to enforce those challenged provisions.

136.    Defendants' refusal to acknowledge the winners of the March 2022 caucus, and to respond to the RNC's and VIGOP's communications about that caucus, continue to harm Plaintiffs and Republican voters in the Virgin Islands. The party leadership disputes resulting from Defendants' actions have hampered the VIGOP's ability to raise funds, nominate candidates for public office, and recruit other Republicans to run for internal party leadership positions. For example, for the primary election scheduled for August 6, 2022, only three Republican candidates (all running for Board of Elections) appear on the list of St. Thomas and St. John candidates seeking any office. *See* https://bit.ly/3yFZFZO. And in St. Croix, only two Republican candidates (both also running for Board of Elections) appear on the list of candidates seeking any office. *See* https://bit.ly/3z0rDkj.

137.    It bears emphasizing: No Republican candidates for internal party offices qualified for the August 2022 primary-election ballot. This portends further and imminent confusion about the VIGOP's leadership if Defendants continue to refuse to recognize the VIGOP leaders elected during the March 2022 caucus.

## The challenged sections of the Virgin Islands Election Code do not further any compelling government interest

138.    As the allegations above make all too clear, the challenged provisions directly regulate the VIGOP's and RNC's internal processes, structures, governance, and leaders.

139.    This direct regulation of the VIGOP's and RNC's internal processes, structures, governance, and leaders is not necessary to further any compelling government interest.

140.    The challenged provisions are not necessary to ensure that primary elections for public officials are orderly, honest, or fair.

141.    The challenged provisions are not necessary to ensure that general elections for public officials are orderly, honest, or fair.

142.    The challenged provisions are not necessary to the integrity of the electoral process.

143.    The challenged provisions do not implicate a political party's ability to successfully complete its external responsibilities in selecting its candidates for public office.

144.    The challenged provisions do not promote the integrity of primary elections for a political party's general election candidates.

145.    The challenged provisions do not promote the integrity of general elections.

146.    The challenged provisions do not impose eligibility requirements for voters in the primary election.

147.    The challenged provisions do not impose eligibility requirements for voters in the general election.

148.    Instead, the challenged provisions embody the Virgin Islands Legislature's attempt to substitute its judgment for the VIGOP's and RNC's judgment as to the desirability of particular internal political party processes, structures, and governance—something the First Amendment flatly prohibits.

## CLAIM FOR RELIEF

### COUNT I

### VIOLATION OF THE VIGOP's AND RNC'S
### FIRST AMENDMENT RIGHT OF ASSOCIATION
### (42 U.S.C. §1983)

149.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

150.    The First Amendment to the United States Constitution protects the right of the VIGOP and the RNC to identify the people who constitute their political association.

151.    The First Amendment to the United States Constitution protects the right of the VIGOP and the RNC to limit their political association to those people only.

152.    The First Amendment to the United States Constitution protects the right of the VIGOP and the RNC to determine the boundaries of their own political association.

153.    The First Amendment to the United States Constitution protects the right of the VIGOP and the RNC to determine the structure which best allows them to pursue their political goals.

154.    The First Amendment to the United States Constitution protects the right of the VIGOP and the RNC to decide the identity of, and the process for electing, their leaders.

155.    The VIGOP and RNC have a cause of action under 42 U.S.C. §1983 to challenge territorial laws, customs, or usages that subject them to the deprivation of any rights, privileges, or immunities secured by the First Amendment.

156.    Sections 303(a)-(b) of Title 18 of the Virgin Islands Code infringe the VIGOP's First Amendment rights of association by dictating the size and composition of the VIGOP's territorial committee and the places where those committee members must reside.

157.    The VIGOP wishes to have more flexibility in regard to the number of elected members on the VIGOP central committee and to consolidate representation from St. Thomas and St. John. But §303(a) requires that committee to have 30 members, with specific breakdowns across St. Thomas-St. John and St. Croix. The VIGOP cannot enact its preferred rules about its own committee's composition and location without violating §303(a)-(b).

158.    Section 232 of Title 18 of the Virgin Islands Code infringes the RNC's and VI-GOP's First Amendment rights of association by requiring them to seek Defendant Board of Elections' approval of the process by which they will select the VIGOP's internal party leaders.

159.    Under §232, the VIGOP and RNC cannot use their own processes and methods for selecting internal party leaders unless Defendant Board of Elections approves them. This approval process infringes the RNC's and VIGOP's First Amendment right of association to select its internal party leaders using its own processes without governmental interference. This approval process also has contributed, and continues to contribute, to confusion among Republican voters in the Virgin Islands about the identity of the VIGOP's (and thus RNC's) acknowledged internal party leaders.

160.    Sections 301(a), 303(c), 305, 306(a)-(b), 307, and 342 of Title 18 of the Virgin Islands Code infringe the RNC's and VIGOP's First Amendment rights of association by dictating rules governing the selection and removal of internal party leaders for the VIGOP (who also serve as members of the RNC).

161.    The code sections listed in paragraph 160 infringe the RNC's and VIGOP's First Amendment rights by requiring them to elect internal party leaders via primary elections held at dates and times of the Board of Election's choosing. As the March 29, 2022, VIGOP party leadership caucus confirms, the VIGOP and RNC wish to use (and have used) methods for selecting

their internal party leaders other than those specified in the code sections listed in paragraph 159, and at times other than those specified in those code sections.

162.    Defendants' continuing refusal to acknowledge the VIGOP and RNC internal party leaders elected during the March 29 caucus has contributed, and continues to contribute, to confusion among Republican voters in the Virgin Islands about the identity of the VIGOP's (and thus RNC's) acknowledged internal party leaders. This compounds the infringement of the RNC's and VIGOP's First Amendment right of association to select its internal party leaders using its own processes without governmental interference.

163.    Sections 303(c) and 305 of Title 18 of the Virgin Islands Code infringe the RNC's and VIGOP's First Amendment rights of association by fixing the maximum term of office for the VIGOP's leaders (who also serve as members of the RNC).

164.    The VIGOP and RNC have a First Amendment right of association to adopt their own rules governing the length of the term of office for their internal party leaders. Sections 303(c) and 305 infringe that right by dictating a term of office for internal party leadership offices. Coupled with Mr. Canegata's claim of an extended term of chairman from 2018-2020, and Defendants' interactions with Mr. Canegata during that time frame, Sections 303(c) and 205 have caused confusion among Republican voters in the Virgin Islands about the identity of the RNC-acknowledged leaders of the VIGOP.

165.    Section 304(a) of Title 18 of the Virgin Islands Code infringes the RNC's and VIGOP's First Amendment rights of association by specifying the time and place of party committee meetings and by granting Defendant Fawkes the authority to designate the hour and place of territorial committee organizing meetings.

166.    Section 304(a) of Title 18 of the Virgin Islands Code also infringes the RNC's and VIGOP's First Amendment rights of association by precluding internal party rules from taking effect until a certified copy of those rules is filed with Defendant Fawkes.

167.    Under the First Amendment, internal party rules for internal party processes, methods, or governance structures do not need to be approved by any governmental entity before they can take effect.

168.    Sections 301(c)-(d) of Title 18 of the Virgin Islands Code infringe the RNC's and VIGOP's First Amendment rights of association by granting local party officials recognized by Defendant Fawkes an exclusive right to use the RNC's trademarks and the right to seek judicial relief that preclude others—including party leaders recognized by the RNC—from using those marks.

169.    On their face and as applied, all those challenged provisions directly regulate the RNC's and VIGOP's internal party leaders, internal party processes, internal party governance, or internal party structures.

170.    On their face and as applied, those challenged provisions limit the RNC's and VIGOP's discretion in how to organize themselves, conduct their affairs, and have their members associate with each other in choosing their internal party leaders.

171.    Not one of these challenged provisions furthers a compelling government interest.

172.    Not one of these challenged provisions is necessary to ensure that elections for public officials are orderly, honest, or fair.

173.    None of these challenged provisions impose eligibility requirements for voters in the general election or promote the integrity of primary elections for the political party's general-election candidates. As a result, not one of the challenged provisions is necessary to the success-

ful completion of a political party's external responsibilities in ensuring the order and fairness of elections.

174.    The challenged laws have caused and continue to cause harm to the VIGOP and RNC. They infringe the VIGOP's and RNC's First Amendment rights of association, a quintessential harm redressable by federal courts.

175.    In addition, the challenged laws have resulted in ongoing disputes with, and lawsuits involving, former VIGOP leaders, aided in part by actions by the Defendants purporting to exercise their authority under the challenged laws. Those disputes create further uncertainty about whether Defendants will recognize the VIGOP leaders ratified by the RNC. As long as that uncertainty arising from those leadership disputes persists, Republican voters in the Virgin Islands might be dissuaded from participating in party processes and meetings, potentially harming the VIGOP's and RNC's ability to elect Republican candidates to public office, to raise funds, and to garner support for Republican policies.

## **PRAYER FOR RELIEF**

This Court should enter judgment for the VIGOP and RNC and against all Defendants and provide the following relief:

a.      A declaratory judgment under 28 U.S.C. §2201 that 18 VIC §§232, 301(a), 301(c), 301(d), 303(a), 303(b), 303(c), 304, 305, 306, 307, and 342 violate the VIGOP's and RNC's rights of association protected by the First Amendment to the United States Constitution, both facially and as applied;

b.      An injunction prohibiting Defendants from applying 18 VIC §§232, 301(a), 301(c), 301(d), 303(a), 303(b), 303(c), 304, 305, 306, 307, or 342 to the RNC or the VIGOP;

c.      Nominal, actual, and punitive damages;

d.      Attorney's fees and costs; and

36

e.      All other relief that the Court deems proper and just.

Dated: August 2, 2022                          Respectfully submitted,

                                               LAW OFFICES OF
                                               ANDREW L. CAPDEVILLE, P.C.


                                               By: /s/ Andrew L. Capdeville
                                               ANDREW L. CAPDEVILLE, ESQ.
                                               V.I. Bar No. 206
                                               8000 Nisky Shopping Center, Suite 201
                                               P.O. Box 6576
                                               St. Thomas, VI 00804-6576
                                               Telephone: (340) 774-7784
                                               Facsimile: (340) 774-2737

                                               *Counsel for Plaintiffs Republican National
                                               Committee and Republican Party of the Vir-
                                               gin Islands*

## VERIFICATION

I, Amanda Abbott, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the statements contained in this Verified Complaint are true and correct to the best of my knowledge.

Dated: July 29, 2022

## VERIFICATION

I, Gordon Ackley, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the statements contained in this Verified Complaint are true and correct to the best of my knowledge.

Dated: July 29, 2022