**FOR OFFICIAL PUBLICATION**

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **REPUBLICAN NATIONAL COMMITTEE;** | ) | |
| **REPUBLICAN PARTY OF THE VIRGIN** | ) | |
| **ISLANDS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:22-cv-0049** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VIRGIN ISLANDS BOARD OF ELECTIONS;** | ) | |
| **CAROLINE F. FAWKES, in her official** | ) | |
| **capacity as the Supervisor of Elections** | ) | |
| **Systems, Virgin Islands,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**APPEARANCES:**

**ANDREW L. CAPDEVILLE, ESQ.**
LAW OFFICES OF ANDREW L. CAPDEVILLE, P.C.
ST. THOMAS, VI

**TYLER R. GREEN, ESQ.**
**CAMERON T. NORRIS, ESQ.**
**FRANK H. CHANG, ESQ.**
CONSOVOY MCCARTHY PLLC
ST. LAKE CITY, UT,
    *For Plaintiffs*

**CHRISTOPHER M. TIMMONS, ESQ.**
ASSISTANT ATTORNEY GENERAL
VIRGIN ISLANDS DEPARTMENT OF JUSTICE
ST. THOMAS, VI
    *For Defendants*

## <u>MEMORANDUM OPINION</u>

**MOLLOY, Chief Judge**

      **BEFORE THE COURT** are the parties' respective motions for summary judgment. (ECF Nos. 59, 61). Both motions are fully briefed and ripe for adjudication. Upon consideration of the briefs, the Court has determined that it can resolve the motions upon

the parties' written submissions and, thus, no hearing is necessary. For the reasons stated below, the Court will deny Defendants' motion. Additionally, the Court will grant in part and deny in part Plaintiffs' motion.

## I. BACKGROUND

Plaintiffs bring this action seeking the Court's determination that certain Virgin Islands statutes regarding the activities of political parties are unconstitutional. In particular, Plaintiffs allege that 18 V.I.C. §§ 232, 301(a), 301(c), 301(d), 303(a)-(c), 304, 305, 306(a), 307, and 342 violate their First Amendment right of association. Complaint (Compl.) (ECF No. 1) at ¶¶ 39-42, 45, 156, 158, 160, 163-, 165, and 168. They also request injunctive relief, damages, and attorney's fees. Compl. at 36.

Plaintiffs claim that the said statutes impermissibly infringe their right to association by allowing Defendants control of matters concerning internal party operations. *Id.* at ¶ 38. Plaintiffs also claim that the statutes do not "further any compelling government interest." *Id.* at 30-31, ¶¶ 138-48. In support of their claims, Plaintiffs recount issues, including litigation, that have arisen as a result of Defendants' interference in what Plaintiffs believe are strictly internal party matters. *Id.* at ¶¶ 46-51, 61-137. For example, Plaintiffs allege that, due to the nature of the intrusion of the statutes, Plaintiff Republican National Committee ("RNC") was prevented "from seating Republican party officials from the Virgin Islands as part of the RNC itself during the 2020 presidential nomination process . . . [r]esult[ing] in Republican voters in the Virgin Islands lacking representation on the RNC . . .." *Id.* at ¶ 51. Plaintiffs also allege that "[b]ecause of Defendants' actions in 2016, no officers from the VIGOP [[Plaintiff Republican Party of the Virgin Islands)] participated in the RNC's 2016 organizational meeting." *Id.* at 16. Plaintiffs further allege the Defendants' implementation of the statutes caused the Republican Party of the Virgin Islands' ("VIGOP") leadership irregularities in 2018 and 2020. *Id.* at 18-22.

In response, "Defendants admit that political parties have a First Amendment right of free association which to a certain extent shields their inner workings from state control." Answer (ECF No. 35) at ¶ 13. They further "[a]dmit that determination of the boundaries of association and the internal structure [that] will allow an association to pursue its goals are

protected by the constitution." *Id.* at ¶ 17. They maintain, however, that such rights are not absolute. *Id.* at ¶¶ 15, 17-18.

Defendants' primary argument in support of their motion for summary judgment is that the "challenged provisions do not impair Plaintiffs' rights to associate; and if they did, any impairment would be insubstantial and reasonably related to a governmental interest." Memorandum of Law in Support of Defendants' Motion for Summary Judgment (ECF No. 60) at 1. Defendants also contend that the challenged provisions are not unconstitutional because "Virgin Islands Law does not penalize Plaintiffs for violating Title 18." *Id.* at 26.

In their motion, Plaintiffs claim that the challenged provisions "directly regulate the RNC's and VIGOP's internal party governance, operations, and selection of party leaders . . .," that "strict scrutiny applies," and that Defendants have failed to carry their burden of showing both a compelling governmental interest and that the statutes are narrowly-tailored to achieve that compelling interest. Plaintiffs Republican National Committee's and Republican Party of the Virgin Islands' Memorandum in Support of their Motion for Summary Judgment (ECF No. 64) at 3-6. Plaintiffs submit that the interpretation and application of the statutory provisions at issue involve questions of law to be determined by the Court. Moreover, they argue that, because the issues in the matter at bar are the same as those presented to the United States Supreme Court in *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989), the holding in *Eu* is applicable and controlling, and, under *Eu*, they are entitled to summary judgment. ECF No. 64 at 1-6.

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 ("Rule 56") if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> As explained by the Supreme Court, for a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but "the mere existence of a scintilla of evidence" favoring the non-moving party will not prevent summary judgment, *id.* at 252. *See also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018). Still, in assessing the

genuineness of a potential factual dispute, inferences from the underlying facts should be drawn in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).

*SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203-04 (3d Cir. 2022).

The First Amendment of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. 1. These rights are secured against state laws through the Fourteenth Amendment which states:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. 14, Sect. 1.

### III. DISCUSSION

To begin, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Under 28 U.S.C. § 1331, district courts have original jurisdiction over civil actions arising under the United States Constitution; here, Plaintiffs allege the Virgin Islands Code provisions in question violate their First Amendment rights. Compl. at ¶ 4. Section 1343(a)(3) of Title 28 of the United States Code grants district courts jurisdiction over suits filed

> To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

28 U.S.C. § 1343(a)(3). The Complaint alleges that Defendants, by virtue of the Virgin Islands statutes at issue, deprive Plaintiffs of their constitutional right to freedom of association. Compl. at ¶ 4.

Additionally, it is hornbook law that:

> federal courts may only adjudicate live cases or controversies. . . . The "case or controversy" requirement is satisfied only where a plaintiff has Article III standing . . . To establish standing, a plaintiff bears the burden of demonstrating that (1) s/he has suffered an actual, concrete injury; (2) the

> injury is "fairly traceable" to the defendant's conduct; and (3) the injury will
> be remedied by the relief the plaintiff seeks from the court.

*Arsenault v. Way*, 539 F. Supp. 3d 335, 344-45 (D.N.J. 2021) (citing *Common Cause of Pa. v. Pa.*, 558 F.3d 249, 257-58 (3d Cir. 2009)). The Court finds that both the RNC and the VIGOP have standing because they are political parties who are regulated by the statutes at issue, have alleged harm from the operation of those statutes, and the alleged harm can be remedied by the relief sought. *See, e.g., Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("[P]olitical parties' government, structure, and activities enjoy constitutional protection" (citing *Eu* v. *San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 230 (1989) and *Tashjian v. Republican Party*, 479 U.S. 208, 224 (1986)); *Tashjian v. Republican Party*, 479 U.S. 208, 224 (1986) ( "The Party's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution."); *see also San Francisco Cnty. Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 818 (9th Cir. 1987), *aff'd, Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989) ( "[P]olitical parties as well as individual party adherents enjoy First Amendment rights. . . . Moreover, '"any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents.'" *Tashjian*, 107 S. Ct. at 549 (quoting *Sweezy*, 354 U.S. at 250). Thus, courts have 'placed the internal workings of a political party squarely within the protection of the First Amendment.' *Ripon Society Inc. v. National Republican Party*, 173 U.S. App. D.C. 350, 525 F.2d 567, 586 (D.C. Cir. 1975), *cert. denied*, 424 U.S. 933, 96 S. Ct. 1147, 47 L. Ed. 2d 341, 96 S. Ct. 1148 (1976)" (other citations omitted) (footnote omitted)).

The Court has reviewed the parties' statements of undisputed/material facts and responses. *See* ECF No. 60 at 2-4,[1] 67 and ECF Nos. 63, 65, 71. The Court finds that none of

---

[1] The Court notes that Defendants include their statement of undisputed facts within their Memorandum of Law in support of their motion rather than within a separate document. *See* ECF No. 60 at 1-3. In their reply to Plaintiffs' opposition to their motion, "Defendants acknowledge that the more modern practice is to file the separate statement of undisputed facts as a supporting document; however old habits die hard." Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (ECF No. 72) at 1 n.1. However, in this Court, a separate statement of undisputed facts is not just a "practice," but is **required** by Rule 56.1(a) of the Local Rules of Civil Procedure. The Court further notes that said Defendants' reply (ECF No. 72) also violates the Court's Local Rules, namely, Local Rule of Civil Procedure 5.1(a), which states: "All pleadings, motions, and other papers presented for filing shall be double-spaced, except for quoted material. **Each page shall be**

*Republican Nat'l Comm. et al. v. Virgin Islands Bd. of Elections et al.*
Case No. 3:22-cv-0049
Memorandum Opinion
Page 6 of 27

the facts that may be in dispute are material or otherwise control the issues in this matter; rather, the issues in this proceeding turn on questions of law, which the Court may resolve upon the motions for summary judgment.

Much of the parties' briefs focus on the level of scrutiny the Court must employ in analyzing the statutes. Plaintiffs argue that because the statutes at issue regulate the internal operations of a political party, strict scrutiny applies. ECF No. 69 at 3-15; ECF No. 64 at 3-6. Plaintiffs rely upon *Eu*, where the Supreme Court considered California statutes similar to the ones at issue in the matter at bar:

> If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest, *Tashjian*, *supra*, at 217, 222; *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *American Party of Texas v. White*, 415 U.S. 767, 780, and n. 11 (1974); *Williams v. Rhodes*, 393 U.S. 23, 31 (1968), and is narrowly tailored to serve that interest, *Illinois Bd. of Elections*, *supra*, at 185; *Kusper v. Pontikes*, 414 U.S. 51, 58-59 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 343 (1972).

*Eu*, 489 U.S. at 222.

Defendants maintain that the challenged provisions should not be declared unconstitutional because "Virgin Islands Law does not penalize Plaintiffs for violating Title 18." ECF No. 60 at 26. They reiterate this conclusion in their reply to Plaintiffs' opposition arguing that "[i]n the absence of legal jeopardy—risk of fine or criminal prosecution—the statutes in question impose little, if any, burden on Plaintiffs' right to freely associate." Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (ECF No. 72) at 6. Defendants reason:

> [I]n practice, violation of the challenged provisions at worst case would merely result in the government's refusal to acknowledge or recognize the party or its actions (i.e. party candidates may not be associated with them on the ballot). Fawkes Deposition p. 259:9-13) [sic] As such the challenged provisions are essentially ballot regulations.

---

**numbered consecutively**." *Id.* (emphasis added). In the interest of judicial economy, the Court will not strike the documents, but advises Defendants and counsel that compliance with the Local Rules is expected and enforced by the Court, and the Court may impose sanctions for any violation thereof.

ECF No. 60 at 13;[2] *see also* Defendants Memorandum of Law in Opposition to Plaintiffs'
Motion for Summary Judgment (ECF No. 66) at 8 ("In the absence of punitive measures for
non-compliance with Title 18, the challenged provisions of Virgin Islands law cannot be
considered restrictions on the right to freely associate at all, let alone to impose substantial
burdens thereupon. In practice, violation of the challenged provisions at worst case would
result in the government's refusal to acknowledge or recognize the party or its actions (i.e.
party candidates may not be associated with them on the ballot). Fawkes Tr. 259:9-13) [sic]
As such the challenged provisions are essentially ballot regulations."). Defendants conclude
that, because the statutes do not impose any penalties, they can be treated as ballot access
or ballot restriction statutes subject to the rational basis standard of scrutiny. ECF No. 60 at
6-17; ECF No. 65 at 2-11. Defendants exhort the Court not to rely upon *Eu* (*see* ECF No. 60 at
9 (where Defendants attempt to distinguish *Eu* on the basis that "neither the Virgin Islands
GOP nor the Republican National Committee (nor any of their members) face criminal
prosecution, civil penalty or any other sanction imposed by law for such failures" and ECF
No. 65 at 2-4); instead, advocating the lower standard of scrutiny for ballot restrictions.[3]

---

[2] Defendants then cite to various cases, which Defendants declare "confirm that because Title 18 does not
impose any consequences for violation of the challenged provisions, there is no violation of Plaintiffs' rights to
associate." ECF No. 60 at 16. The Court notes that the cited cases specifically address ballot restrictions, not
statutes that on their face regulate the internal affairs of political parties, and none of the cited cases address
the presence or absence of civil or criminal penalties. In fact, the court in one of the cited cases, which involved
a ballot restriction statute, observes:

> Courts have identified three types of severe burdens on the right of individuals to associate as
> a political party. First are regulations meddling in a political party's internal affairs. . . . Second
> are regulations restricting the "core associational activities" of the party or its members. . . .
> Third are regulations that "make it virtually impossible" for minor parties to qualify for the
> ballot.

*Sam Party of N.Y. v. Kosinski*, 987 F.3d 267, 275 (2d Cir. 2021) (citations and footnote omitted). The court
disagreed with the plaintiff that the statute at issue was like the latter two types. *Id.* The first type, "meddling
in a political party's internal affairs" was not even before the court. In another cited case, *Timmons v. Twin Cities
Area New Party*, 520 U.S. 351 (1997), the Supreme Court notes that the statutes at issue before it "are silent on
parties' internal structure, governance, and policy-making . . . ." *Id.* at 363.
[3] This lower standard of scrutiny is supported by the holding in *Const. Party of Pa. v. Cortes*, 116 F. Supp. 3d 486
(E.D. Pa. 2015):

> A state law which affects the exercise of a fundamental right is "subject to strict scrutiny and
> will pass constitutional muster only if it is narrowly tailored to serve a compelling state
> interest." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998) (citations
> omitted). However, ballot access cases are an exception. Traditional strict scrutiny analysis
> does not apply. Rather, *Anderson* teaches that I must balance the burden the state regulation

The Court disagrees with Defendants that the challenged statutes can be transformed in their interpretation and application upon the existence or absence of criminal or other penalties. In addition, the Court has been unable to locate any legal precedent declaring that the presence or absence of criminal and/or civil penalties is a consideration when determining the constitutionality of a state or local law, ordinance, or regulation. Indeed, in *Free Speech Coal., Inc. v. AG of the United States*, 974 F.3d 408 (3d Cir. 2020), where the Third Circuit Court of Appeals had the occasion to address whether criminal penalties for noncompliance with the requirements of the statutes at issue could withstand scrutiny under the First Amendment, the court stated:

> [T]he plaintiffs' position does not comport with the Supreme Court's First Amendment jurisprudence. Their position boils down to an assertion that a less severe penalty should be more likely to survive First Amendment review because a less severe penalty is less restrictive of speech. That does not accord with the Supreme Court's recognition that the First Amendment shields against governmental efforts to restrict free speech even when enforced through "trivial" forms of punishment. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 n.8, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990).

*Id.* at 425.

Further, the Court cannot conceive how the lack of criminal penalties somehow transforms the statutes at issue to ballot restrictions.[4] The statutes at issue clearly regulate the internal affairs of political parties. Indeed, Defendants admit such: "Defendants admit that Virgin Islands law sets forth minimum requirements with respect to the size, composition, elections, and terms of office of members of political parties in the Territory." Answer (Ans.) (ECF No. 35) at ¶ 2. Notwithstanding Defendants' use of the qualifier "minimum," Defendants admit that the statutes at issue, in fact, regulate the "size, composition, elections, and terms of office of members of political parties in the Territory." *Id.* As Plaintiffs summarize, the statutes at issue:

---

imposes on plaintiffs' associational rights against the asserted state interest for the rule. 460 U.S. at 789.

*Id.* at 499.

[4] The statutes at issue cannot be reduced, transformed, or interpreted as ballot access restrictions. None of the challenged statutes regulate general elections or a political party's access to the ballot. Consequently, all the authority cited by Defendants regarding those types of statutes are irrelevant.

Case: 3:22-cv-00049-RAM-RM   Document #: 75   Filed: 01/10/24   Page 9 of 27

*Republican Nat'l Comm. et al. v. Virgin Islands Bd. of Elections et al.*
Case No. 3:22-cv-00049
Memorandum Opinion
Page 9 of 27

> prescribe how the RNC and VIGOP must select internal party officers (18 V.I.C.
> §§232, 301(a), 303(c), 305, 306(a), 307, 342); the size and structure of
> VIGOP's territorial committee (§303(a)- (b)); the maximum term of office for
> VIGOP's chairman and territorial-committee members (§§303(c), 305); timing
> requirements for a party organizational meeting (§304(a)); external steps a
> party must take before its internal rules become effective (§304(a)); and the
> identity of individuals who may use the party's federally registered
> trademarks (§301(c)-(d)).

Plaintiffs Republican National Committee's and Republican Party of the Virgin Islands' Reply
in Support of Motion for Summary Judgment (ECF No. 70) at 2. Moreover, Plaintiffs detail
how the application of the statutes have adversely impacted them and their internal
operations that have nothing whatsoever to do with ballot access. *See, e.g.,* Compl. at ¶¶ 46-
51, 61-137; *see also* ECF No. 69 at 7-8 (where Plaintiffs explain how not being recognized as
a political party in the Virgin Islands does not just restrict ballot access, but is "effectively a
death sentence" for the party).

 The Complaint identifies twelve[5] specific provisions of the Virgin Islands Code that
Plaintiffs contend are unconstitutional. With regard to each statute, the Court first considers
whether the statute impermissibly infringes upon Plaintiffs' internal affairs, as alleged, and,
thus, implicates a fundamental right. *See, e.g., Kraham v. Lippman*, 04 Civ. 1684 (SCR), 2006
U.S. Dist. LEXIS 95641, at *4 (S.D.N.Y. May 17, 2006) ("The freedom to associate with political
parties is a fundamental right guaranteed by the First and Fourteenth Amendments to the
Constitution." (citing *Tashjian v. Republican Party*, 479 U.S. 208, 214 (1986))).

 If the Court determines that the statute infringes upon Plaintiffs' fundamental rights,
the Court then must find that the infringement or burden is "severe" before subjecting it to
strict scrutiny,[6] as directed by the Third Circuit in *Patriot Party v. Allegheny Cnty. Dep't of*

---

[5] Plaintiffs state that they are challenging "*15* provisions of Virgin Islands law," ECF No. 64 at 3, and then list
them: "18 V.I.C. §§232, 301(a), 301(c), 301(d), 303(a), 303(b), 303(c), 304, 305, 306(a), 307, 342." *Id.* (emphasis
added). However, by the Court's count, this list includes 12 individual provisions (Section 304 consists of
subparagraphs (a) and (b), but Plaintiffs' brief addresses only subparagraph (a) (*see* ECF No. 64 at 16, 19-21)).
[6] It is true that *Eu*, can be read as Plaintiffs urge, namely that "[t]he Supreme Court 'indicated in *Eu* that it would
invalidate *any* election law that burdened the fundamental constitutional rights of political parties and their
members, unless the law was narrowly tailored to advance a compelling state interest.'" ECF No. 64 at 4
(quoting *Patriot Party v. Allegheny County Dep't of Elections*, 95 F.3d 253, 258 n.2 (emphasis added) (citing *Eu*,
489 U.S. at 222)). However, the *Patriot Party* court states, in the same footnote cited by Plaintiffs:

*Elections*. 95 F.3d 253, 258 (3d Cir. 1996) ( "To determine whether a state election law violates the U.S. Constitution, we first examine whether the challenged law burdens rights protected by the First and Fourteenth Amendments. *Eu*, 489 U.S. at 222 . . .. If the burden on the plaintiff's rights is severe, the state's interest must be compelling and the law must be narrowly tailored to serve the state's interests . . .. We proceed, therefore, by first examining the burden that the challenged Pennsylvania election laws place on the Patriot Party's constitutional rights. We then consider the justification that Pennsylvania has proffered to support the imposition of this burden." (citations omitted) (footnote [referenced *infra* at note 3] omitted)); *see, also, e.g., Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451-52 (2008) ("Election regulations that impose a severe burden on associational rights are subject to strict scrutiny, and we uphold them only if they are 'narrowly tailored to serve a compelling state interest.' . . . If a statute imposes only modest burdens, however, then 'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions' on election procedures." (citations omitted)).

Plaintiffs assert that the challenged statutes are unconstitutional both facially and as applied.

> A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1988). An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. *See, e.g., Wis. Right to Life, Inc. v. FEC*, 546 U.S. 410, 411-12, 126 S. Ct. 1016, 163 L. Ed. 2d 990 (2006) (per curiam).

*United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). The Third Circuit recently expounded on the distinction further in *Benezet Consulting LLC*, explaining that:

> In general, "the distinction between facial and as-applied challenges . . . . goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S. Ct. 876, 175 L. Ed. 2d 753

---

A law must be narrowly tailored and justified by a compelling state interest *only if it imposes a severe burden* on a political party's rights. *See, e.g., Burdick*, 504 U.S. at 433-34. Despite the broad language of *Eu*, a state may implement reasonable, nondiscriminatory election regulations without meeting such a stringent standard.

*Patriot Party*, 95 F.3d at 258 n.2 (emphasis added).

> (2010). That is, "[a]n 'as applied' challenge is a claim that the operation of a statute is unconstitutional in a particular case while a facial challenge indicates that the statute may rarely or never be constitutionally applied." 16 C.J.S. Constitutional Law § 243; *see also United States v. Huet*, 665 F.3d 588, 600-01 (3d Cir. 2012) (noting that an as-applied attack contends that the a law is unconstitutional, not as written but rather in its application to a specific person under specific circumstances); *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (same). The Supreme Court has also commented on the distinction, noting that as-applied relief must be limited to the specific plaintiffs and circumstances of the litigation. *Doe v. Reed*, 561 U.S. 186, 130 S. Ct. 2811, 177 L. Ed. 2d 493 (2010) ("Because [the]... claim and the relief that would follow—an injunction . . . — reach beyond the particular circumstances of these plaintiffs, they must satisfy this Court's standards for a facial challenge to the extent of that reach.")

*Benezet Consulting LLC v. Sec'y Commonwealth*, 26 F.4th 580, 585 (3d Cir. 2022) (footnote omitted).[7]

Based upon the foregoing, the Court considers each statute serially, determining whether the statute imposes a severe burden upon Plaintiffs' right to associate and, if a severe burden is evident, whether Defendants have demonstrated both a compelling governmental interest to justify such a burden and the least-restrictive means to achieve that compelling interest.

### A. 18 V.I.C. § 232 – Certification of Party Primary Elections Process

This statute is titled "Primary elections" and consists of two sentences. The first sentence provides: "Party primary elections shall be held in the Virgin Islands on the first Saturday of August for the purpose of choosing candidates for nomination to public offices to be voted for at the ensuing general election." 18 V.I.C. 232. The second sentence therein provides: "[T]he Board of Elections will be responsible for certifying the process to be used by any political party to select party officers and candidates for public-office." *Id*.

Defendants maintain that this statute does not regulate how Plaintiffs or any other political party choose their party officers. Defendants claim that "certifying" Plaintiffs' said process does not equal or mean "approve." *See* Answer (ECF No. 35) at ¶ 163 ("Defendants deny the allegations set forth in in Paragraph 159 of Plaintiff's Complaint. [Section] 232

---

[7] Where the Court finds that the statute is unconstitutional, that finding is "on its face" unless otherwise indicated that it is unconstitutional "as-applied" by the Defendants.

merely specifies that the Board of Elections is responsible to 'certify' the process to be used by a political party to select party officers and candidates for public-office. It doesn't give Defendants the power to 'approve' them").

Plaintiffs counter Defendants' assertion, stating that:

12. Defendants have used the terms "certify" and "approve" interchangeably. Fawkes Tr. 83:5-85:18.

13. Supervisor Fawkes explained during her deposition that the word "certify" is "more stringent" than the word "approve." Fawkes Tr. 80:4-81:8.

14. Former Chairman Williams explained that "[c]ertification comes as a result of an approval by the [B]oard." R.Williams Tr. 35:21-24 (Ex. E).

Plaintiffs Republican National Committee's and Republican Party of the Virgin Islands' Statement of Material Facts (ECF No. 63) at 2-3, ¶¶ 12-14.

Since the Court is unable to find any ruling by the courts of the Virgin Islands regarding the interpretation of *certifying* as used in the statute,[8] the Court gives effect to the plain meaning of the phrase. 1 V.I.C. § 42 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language."); *see also, e.g., Smith v. Henley*, 65 V.I. 179, 194 (Super. Ct. 2016) ("[U]nder the canons of statutory construction, the plain meaning of a statute is controlling, absent any

---

[8] The Court located two cases wherein the statute is mentioned. Neither case attempts to interpret the meaning of *certifying*. The first case, *Bryan v. Fawkes*, 62 V.I. 19 (Super. Ct. 2014), merely cites to the statute: "On August 2, 2014, the first Saturday in August, the Virgin Islands will hold a primary election for the position of Delegate to Congress. *See* 18 V.I.C. § 232 (providing that primary elections must be held on the first Saturday in August)." *Id.* at 33. However, in the second case, *Ackley v. Fawkes*, Case No. ST-2020-CV-00201, 2020 V.I. LEXIS 58 (Super. Ct. June 4, 2020), while the court does not interpret the meaning of *certifying*, the court observes:

> Plaintiffs ask the Court to 1) enjoin Canegata and Schanfarber from holding a caucus for party officers, 2) enjoin the BOE from accepting new petitions for party officers, and 3) direct the Board of Elections to accept Ackley and Gumbs-Hecht's nomination papers and declare them winners since no other persons have filed for the same position. Section 232 of Title 18 of the V.I. Code requires that candidates for *public* office be elected by primary. However, the parties agree that this provision does not expressly require the same for candidates of *party* office. The only requirement for the election of party officers under Section 232 is that the election process be certified by the BOE.

*Id.* at *12-13 (footnotes omitted). The *Ackley* court then finds, without further explanation: "[t]hat this evidence, in light of Section 232, suggests that the process by which political parties elect party officers is not limited to a primary election, but rather is dependent on the BOEs certification, as required under Section 232." *Id.* at *14. Thus, the Virgin Islands Superior Court has held that BOE's certification under Section 232 controls the "process by which political parties elect party officers." In light of this holding, the Court finds Defendants' arguments that Section 232 does not regulate how a political party elects its party officers unavailing.

ambiguity." (citations omitted)); *Crawford v. Daly*, 55 V.I. 66, 80 (Super. Ct. 2010) ("Given the surfeit of cases by the United States Supreme Court on the issue of statutory construction, the plain meaning of a statute is controlling, absent ambiguity.").[9]

The Court begins with the Merriam-Webster definition of *certify*. *See, e.g., United States v. Montgomery*, 2:20-cr-00175-1, 2023 U.S. Dist. LEXIS 36276, at *8 (W.D. Pa. Mar. 1, 2023) ("Dictionary definitions are a useful starting point for ascertaining the ordinary meaning of a statute's language, before a court also proceeds to consider, as it must, the context of the language and the statute. (citing *Yates v. United States*, 574 U.S. 528, 537 (2015))). According to the Merriam-Webster internet website, the present-day definition of *certify* is "[t]o attest authoritatively: such as . . . CONFIRM . . . to attest as being true or as represented . . . to inform with certainty : ASSURE." (https://www.merriam-webster.com/dictionary/certify (last visited Jan. 9, 2024). The word *approve* is defined there as: to have or express a favorable opinion of . . . to accept as satisfactory . . . to give formal or official sanction (see SANCTION entry 1 sense 4c) to **:** RATIFY. . . to take a favorable view" (https://www.merriam-webster.com/dictionary/approve (last visited Jan. 9. 2024)).

While these two words often are used interchangeably, they have fundamentally different meanings. The statute contains a form of the word *certify*. The Court must give effect to the plain meaning of the statute. The Court finds that *certifying* means that the Board of Elections ("BOE") confirms or attests that Plaintiffs have a process for selecting their party officials. Therefore, as the Court interprets and applies the provision, the second sentence of Section 232 mandates that a political party submit its process, that is, its written outline or instructions or rules, for selecting its party officers and candidates to show that it has such a process, and the BOE would certify it, that is, confirm that it exists and attests that it is as represented.

Employing this definition, and not the definition or interpretation apparently used and applied by Defendants, the Court finds that the mere "certifying" of a political party's process for selecting party officials does not unreasonably infringe upon a party's internal

---

[9] Despite the deposition testimony of Defendant Fawkes, *see* ECF No. 63 at ¶ 12, the Court finds that the term *certifying* is not ambiguous.

affairs. Nevertheless, the Court finds that because the statute fails to provide any details regarding when, how, how often, etc., parties are required to have their process certified by the Board of Elections (Board, BOE), it is unconstitutionally vague. "A statute is unconstitutionally vague if it lacks clear definition or explicit standards such that it does not give a person of ordinary intelligence an opportunity to know what is prohibited." *Eisberg v. Dutchess Cnty. Legislature*, 37 F. Supp. 2d 283, 288 (S.D.N.Y) (citing *Dae Woo Kim v. City of N.Y.*, 774 F. Supp. 164, 169 (S.D.N.Y. 1991)), *aff'd*, 1999 U.S. App. LEXIS 10031 (2d Cir. May 20, 1999); *see also Brockert v. Skornicka*, 711 F.2d 1376, 1381 (7th Cir. 1983) ("[A] standardless ordinance is subject to facial attack under the due process clause through the vagueness doctrine. . . . First, a vague law does not give a person of ordinary intelligence a reasonable opportunity to comply with the law. In effect, there is no notice of what the law requires. Second, a vague law lacks explicit standards for its application . . . . The application of these standards varies with the nature of the enactment because fair notice and fair enforcement are more important in some areas than in others. . . . Thus, the vagueness doctrine is most strictly applied when the law interferes with free expression or the exercise of other constitutionally protected rights." (citations omitted)); *United States v. Smith*, Crim No. 2:23-cr-00008, 2023 U.S. Dist. LEXIS 184606, at *17 (W.D. Pa. Oct. 13, 2023) ("'The void-for-vagueness doctrine reflects the fundamental principle that, in order to comply with the requirements of due process, a statute must give fair warning of the conduct that it prohibits.' . . . 'A statute is unconstitutionally vague under the Due Process Clause if it (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorizes or even encourages arbitrary and discriminatory enforcement.'") (citations omitted)); *Morgan v. Martinez*, Civ. No. 3:14-02468 (FLW/DEA), 2015 U.S. Dist. LEXIS 61877, at *27 (D.N.J. May 12, 2015) ("A regulation is void for vagueness if it (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" (quoting *Ryan v. Scism*, 474 F. App'x 49, 52 (3d Cir. 2012) (quoting *Hill v. Colo.*, 530 U.S. 703, 732 (2000))).

Further, even if the Court's finding of vagueness is incorrect, the Court still finds that the second sentence of the statute infringes upon a party's Fourteenth Amendment right to due process because the statute makes no provision for redress for parties whose "process" is not "certified." *See, e.g., Raab Family P'ship v. Borough of Magnolia*, Civil No. 08-5050 (JBS), 2009 U.S. Dist. LEXIS 11334, at *40-41 (D.N.J. Feb. 13, 2009) ("the complete absence from the ordinance of any mechanism for a landowner to be heard with regard to the denial of a certificate of occupancy violates the Due Process Clause and renders the ordinance unconstitutional on its face").

In reaching this conclusion, the Court first notes that the statute can be arbitrarily applied because it is silent regarding when and/or how often the BOE is to certify a party's process for selecting its officers. In addition, given the way "certifying" has been interpreted and applied by Defendants, the absence of any standards or guidelines regarding how the BOE "certifies" a party's process necessarily impairs a political party's First Amendment right to associate. For example, as Plaintiffs aver:

> 30. The certification requirement restricts a political party's ability to select its leaders through a rule or process that it wants to use but the Board has not certified. Fawkes Tr. 79:9-12.

> 31. Using uncertified rules or processes to select party officers could carry harsh consequences. Defendants consider results of uncertified selection processes to be "not legitimate," "null," and "void." Fawkes Tr 69:9-11, 208:11-21. 32. The Election System will not recognize the results of a selection process that was not approved by the Board. Fawkes Tr. 69:17-19; R.Williams Tr. 31:17-32:2

ECF No. 63 at 6-7.

Second, as Plaintiffs recount, Defendants failed to certify their caucus rules for selecting their party officers. ECF No. 64 at 10-14. However, nothing in the statute provides a means to challenge the BOE's decision or otherwise seek redress for noncertification. This absence of a means to challenge the Board's decision not to certify not only impairs Plaintiffs' and any other political party's associational rights, but also does so without due process of law. Consequently, the Court finds that this second sentence of Section 232 is unconstitutional to the extent it allows the BOE the right to reject a political party's process used in selecting its officers and candidates for public-office.

### B. 18 V.I.C. §§ 301(c) and (d) – Use of a National Political Party's Symbol

Section 301(c) and (d) concerns the use of a national political party's symbol, emblem, or insignia. Plaintiffs claim that these provisions interfere with the party's internal rules surrounding the party emblem and who is authorized to use them – rules that should be within the sole purview of the party, not the BOE or Supervisor or Elections. ECF No. 64 at 22-24.

The provisions at issue provide:

**(c)** Whenever a political party in the Virgin Islands affiliates with a national political party, committee, convention or organization, regardless of when such affiliation took place, no association, group, club, organization or instrumentality shall use the symbol, emblem, or insignia, of the national political party, convention, committee or organization which has affiliated with a Virgin Islands political party, without the express consent in writing from the chairman and secretary of the Virgin Islands political party filed with the Supervisor of Elections. A petition for an injunction to restrain such association, club, group or instrumentality from using such symbol, emblem, or insignia may be filed in the District Court by the officers of said affiliated political party and/or the Supervisor of Elections.

**(d)** The Chairman and the Secretary of any political party which is affiliated with a national political party may certify to the Supervisor of Elections at least twenty-eight (28) days prior to an election the emblem or emblems of such national party with which it is affiliated and such certification shall be prima facie evidence of such emblem or emblems of such national party.

18 V.I.C. § 301(c)-(d).

As this Court recently has found, Plaintiff RNC "owns" the "trademarks 'RNC,' 'GOP,' 'Republican National Convention,' and the RNC's elephant logo mark . . .." *Republican Nat'l Comm. v. Canegata*, Case No. 3:22-cv-0037, 2022 U.S. Dist. LEXIS 142520, *5, *8 (D.V.I. Aug. 10, 2022). RNC contends that these challenged provisions "deprive[] the RNC of its exclusive right to use its federally registered trademarks." ECF No. 64 at 23. Plaintiffs allege that, because of the BOE's exercise of authority under 18 V.I.C. § 232 not to certify what Plaintiffs refer to as their Remedial Caucus Plan in 2020, "Defendants have refused to recognize the current chairman (Mr. Ackley) as legitimate, asserted that the former chairman (Mr. Canegata) was the chairman until at least August 2022, and now assert that VIGOP has

no party chairman." ECF No. 64 at 23.[10] According to Plaintiffs, Defendants' refusal to recognize Mr. Ackley as VIGOP chairman, allowed:

> Mr. Canegata [to invoke] Virgin Islands law (§301(c))—which purports to allow a party chairman to sue individuals who use the party's emblems without the chairman's consent—to sue Mr. Ackley, Ms. Gumbs-Hecht, Mr. Williams, and the RNC in the Superior Court. SMF [ECF No. 63] ¶¶156-57. Mr. Canegata also unlawfully used the RNC's trademark without permission by claiming to be VIGOP's chairman, thereby causing the RNC irreparable harm. *See RNC v. Canegata*, 2022 WL 3226624, at *7 (D.V.I. Aug. 10).

ECF No. 64 at 11. The Court agrees with Plaintiffs that this "conflict between a territorial government and a national political committee over who leads that committee's local affiliate is a severe burden on First Amendment rights." *Id*. When granting RNC's motion for preliminary injunction in *RNC*, 2022 U.S. Dist. LEXIS 142520,[11] the Court determined that, at common law, an owner of a trademark has the right to revoke or terminate a license to use such mark. *Id*. at *13 (where the Court quotes favorably, '"Courts are in agreement that a trademark license is terminable at will by the trademark owner, even where it is an express license . . . and certainly when the license is only implied.'" (quoting *Chicago Mercantile Exch. Inc. v. Ice Clear US, Inc.*, Case No. 18 C 1376, 2021 U.S. Dist. LEXIS 154686, at *43-44 (N.D. Ill. Aug. 17, 2021))). Section 301(c) and (d) overrides that right by granting the authority to use the emblem or mark of a national political party to the "chairman and secretary of the Virgin Islands political party filed with the Supervisor of Elections," instead of allowing the political party – the actual owner of the emblem – the right to determine who may use it. The scenario where Defendants recognize individuals other than those whom the VIGOP has determined to be its officers already has played out as described in Plaintiffs' statement of material facts (ECF No. 63) and their memorandum in support of their motion for summary judgment (ECF No. 64) as well as in the aforementioned litigation.

One of the arguments propounded by Defendants in *RNC*, 2022 U.S. Dist. LEXIS 142520, was that "[t]he law of the Virgin Islands does not provide Plaintiff with

---

[10] "Defendants admit that the election system website identifies Mr. Canegata as VIGOP Chairman." Answer (ECF No. 35) at ¶ 135.
[11] This case was initiated by the RNC to force Mr. Canegata to discontinue using the RNC's trademarked symbols and emblems after he was no longer recognized by the RNC as VIGOP chairman.

authorization or grounds to revoke Defendants' license, permission, and other rights, to use Plaintiff's federally registered trademarks; to the contrary, the law of the Virgin Islands provides Defendants with such authorization." Defendants' Closing Arguments in Opposition of Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (3:22-cv-0032 (D.V.I.) (ECF No. 47) at 8 (citing 18 V.I.C. 15 § 301(c)). The Court rejected that argument, stating:

> the Court is not swayed by any Virgin Islands law that purports to regulate rights under the federal Lanham Act. *See, e.g., Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1284 (4th Cir. 1987) ("If a conflict arises between federal and state law, . . . the Lanham Act effects a limited preemption of state law, resolving the conflict in favor of the federal registrant's rights."); *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 560 (1st Cir. 1982) ("[T]he rights of [the infringer] under Puerto Rico law cannot circumscribe the rights of [the federal trademark owner] to protection for its trademark under the federal trademark laws."). Therefore, this argument fails from the outset.

*Republican Nat'l Comm.*, 2022 U.S. Dist. LEXIS 142520, at *18-19. One of the Lanham Act's purposes is "[t]o protect registered marks used in such commerce from interference from State, or territorial legislation . . . ." 15 U.S.C. § 1127. Because 18 V.I.C. § 301(c)-(d) can, and, in this case, does, directly interfere with an owner's use of federally registered marks, the Court finds that these provisions are preempted by the Lanham Act and are void to the extent it allows a Virgin Islands political party to use its national affiliates' trademarked symbol, emblem, or insignia without the approval of the owner of the trademark.

### C. 18 V.I.C. §§ 303(a)-(c) and 18 V.I.C. § 305 – Structure of Territorial Committees, Other Party Committees and Party Officers

These statutes establish "territorial committees" and govern "other committees" of a political party. Section 303 provides:

> (a) Each political party in the Virgin Islands shall have a territorial committee which shall be comprised of thirty (30) elected members as follows:
>
> > (1) eight (8) members from the election district of St. Thomas-St. John, six (6) of whom shall reside on St. Thomas and two (2) of whom shall reside on St. John;
>
> > (2) six (6) members from the election district of St. Croix; and
>
> > (3) sixteen (16) at large members, of whom not less than seven (7) shall reside on St. Croix and not less than seven (7) shall reside on St. Thomas.

> (b) In addition to the elected members of the territorial committee of a political party there shall be such ex officio members as provided for by party rules, but not to exceed twenty (20) voting ex officio members. Such ex officio members shall have such powers and duties as set forth in the party rules.

> (c) The elected members of the territorial committee of a political party shall be elected at the primary election and shall serve for two (2) years. Each elector enrolled in a political party may, at the primary election, vote for members of the territorial committee up to the number at large and for the election district in which he registered to vote.

18 V.I.C. § 303. Section 305 provides:

> The members of all other party committees, and all other party officers, whose election is required by the party rules, shall be elected at the primary in the manner provided by this title; provided, that in any event, where the party rules provide for such offices, the national committeeman, the national committeewoman, the state chairman, and a district chairman each for the Islands of St. Croix, St. John and St. Thomas shall be elected at the primary election and shall serve for two (2) years, except that commencing with the year 1972 the national committeeman and the national committeewoman elected shall serve for four (4) years if the party rules so provide.

18 V.I.C. § 305.

The Court agrees with Plaintiffs that these provisions are analogous to the provisions struck down by the Supreme Court in *Eu*. Some of the statutes before the *Eu* Court concerned state committees wherein the Court stated:

> In addition to restricting the primary activities of the official governing bodies of political parties, California also regulates their internal affairs. Separate statutory provisions dictate the size and composition of the state central committees; set forth rules governing the selection and removal of committee members; fix the maximum term of office for the chair of the state central committee; require that the chair rotate between residents of northern and southern California; specify the time and place of committee meetings; and limit the dues parties may impose on members.

*Eu*, 489 U.S. at 218-19 (footnotes omitted). Similarly, these Virgin Islands statutes dictate the territorial commmittes' size and composition and fix terms of office for other major party positions such as the national committeeman, national committeewoman, state chair, and district chair. Notably, the statute specifically requires that a political party's territorial committee be comprised of thirty (30) elected members, wherein eight (8) committee members are elected from the district of St. Thomas/St. John and six (6) members are elected

from the district of St. Croix. The Court notes that the U.S Virgin Islands is comprised of two districts: the district of St. Thomas/St. John and the district of St. Croix. It is unclear why the statute would dictate that there be an unequal amount of committee members between the two island districts. In addition, the provisions require committee elections to be held "at the primary election." 18 V.I.C. § 303(c) ("The elected members of the territorial committee of a political party shall be elected at the primary election and shall serve two (2) years.").

The laws identified above burden the rights of the VIGOP. By requiring parties to have 30 committee members, comprised in a certain manner, and mandating term limits the laws "prevent[] the political parties from governing themselves with the structure they think best." *Eu*, 489 U.S. at 230. The VIGOP might decide that its territorial committee should have fewer than 30 members comprised in a manner different than that set forth in the statute. The VIGOP might also decide that the terms for territorial committee members, national committeeman, national committeewoman, state chair, or district chair should be more than two years. *See Id.* ("A party might also decide that the state central committee chair needs more than two years to successfully formulate and implement policy."). To be clear, "a state cannot substitute its judgment for that of a party as to the desirability of a particular internal party structure, any more that it can tell a party that its proposed communication to party members is unwise." *Id.* at 233.

Like the Court stated in *Eu*, the Court finds that these

restrictions on the organization and composition of official governing bodies [and] the limits on the term of office . . . directly implicate the associational rights of political parties and their members. . . . Freedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders. . . . The laws at issue burden these rights. [The Virgin Islands] prevents the political parties from governing themselves with the structure they think best. . . . *Each restriction thus limits a political party's discretion in how to organize itself, conduct its affairs, and select its leaders.* (emphasis added).

*Id.* at 229-30 (internal citations and footnotes omitted). Based upon the holding in *Eu*, the Court finds that these statutes severely burden Plaintiffs' First Amendment rights. Consequently, for them to be deemed constitutional, Defendants must persuade the Court

that they serve a compelling governmental interest and are the least restrictive means to achieve that interest.

As noted hereinabove, "Defendants admit that Virgin Islands law sets forth minimum requirements with respect to the size, composition, elections, and terms of office of members of political parties in the Territory." Answer (ECF No. 35) at ¶ 2. Despite Defendants' use of the qualifier "minimum," nothing in the case law suggests that even minimum requirements that infringe upon a political party's right to associate cannot constitute a severe burden upon that right.

In their defense, Defendants primarily rely upon *Marchioro v. Cheney*, 442 U.S. 191 (1979). *See* ECF No. 60 at 11-13; ECF No. 66 at 2-4. However, such reliance is misplaced. Defendants fail to appreciate the context of *Marchioro*, and, likewise, *Eu*'s commentary regarding *Marchioro*. Even though *Marchioro* refers to the "23 States" having statutes that "establish state central committees composed of an equal number of committee members from each unit of representation," *id.* at 194 n.11, the *Marchioro* Court noted that a challenge to a portion of the composition requirement failed in the Supreme Court of Washington and that ruling was not raised on appeal to the United States Supreme Court. *Id.* at 194 n.8 ("Appellants also challenged the requirement of Wash. Rev. Code §§ 29.42.020 and 29.42.030 (1976) that the two persons elected as county delegates be one man and one woman. . . . The Washington Supreme Court rejected the claim, 90 Wash. 2d, at 308, 582 P. 2d, at 493. Appellants do not seek review here of the 'one man and one woman' requirements of the statute. Nor do they raise any claim based on the Equal Protection Clause of the Fourteenth Amendment. See n. 12, *infra*."). Again, in footnote 12, the Court notes that they were restricted to review only the statutory requirements raised in the appeal. *Id.* at 197 n.12 ("Since appellants do not claim that these statutory requirements impose any impermissible burdens, we have no occasion to consider whether whatever burdens they do impose are justified by the legitimate state interests served by these requirements."). The *Eu* Court also distinguished its holding from *Marchioro*, explaining:

> *Marchioro* v. *Chaney*, 442 U.S. 191 (1979), is not to the contrary. There we upheld a Washington statute mandating that political parties create a state central committee, to which the Democratic Party, not the State, had assigned

> significant responsibilities in administering the party, raising and distributing funds to candidates, conducting campaigns, and setting party policy. *Id.*, at 198-199. The statute only required that the state central committee perform certain limited functions such as filling vacancies on the party ticket, nominating Presidential electors and delegates to national conventions, and calling state-wide conventions. The party members did not claim that these *statutory* requirements imposed impermissible burdens on the party or themselves, so we had no occasion to consider whether the challenged law burdened the party's First Amendment rights, and if so, whether the law served a compelling state interest. *Id.*, at 197, n. 12. . . .

*Eu*, 489 U.S. at 232 n.22. Unlike the party members in *Marchioro* before the Supreme Court, the political party plaintiffs in the matter at bar are challenging these statutory requirements regarding party committees. Therefore, unlike what was presented to the *Marchioro* Court, the committee composition and other requirements are directly before this Court. Consequently, the Court finds this argument of Defendants futile. Beyond this argument, as with all the statutes at issue, Defendants insist that the burden imposed upon Plaintiffs is "insubstantial," *see* ECF No. 60 at 22-23; ECF No. 66 at 16-19[12], and, therefore, constitutional. Defendants do not even attempt to assert a basis upon which the Court could find a "compelling state interest." In the absence of a showing of a compelling governmental interest, the Court finds 18 V.I.C. §§ 303(a)-(c) and 18 V.I.C. § 305 unconstitutional. *See Eu*, 489 U.S. at 233 (stating that "a State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure an election that is orderly and fair. Because California has made no such showing here, the challenged laws cannot be upheld.").

### D. 18 V.I.C. § 304(a)[13]

---

[12] The Court finds Defendants' attempt to mischaracterize these statutes and argue that Plaintiffs are free to "associate outside of the parameters of Virgin Islands' election law," ECF No. 66 at 19, disingenuous. None of the statutes challenged by Plaintiffs in this proceeding address how a political party is recognized as a party in the Virgin Islands. They all directly impose requirements and purport to regulate parties that are already recognized as parties. Consequently, Defendants' citation to caselaw regarding statutes regulating recognition or formation of a political party or a party's access to the ballot are inapposite.

[13] As the Court notes *supra* at note 2, Plaintiffs' list of the statutes they allege are unconstitutional in the opening of their memorandum in support of their motion refers to Section 304, but Section 304 consists of two subparagraphs. In the argument section of their said memorandum, Plaintiffs address only subparagraph (a) of Section 304; thus, the Court analyzes only that section here.

Next, the Court will address the constitutionality of 18 V.I.C. § 304(a). Although only one subparagraph of this statute appears to be in dispute, many elements are contained within that one provision. Section 304(a) provides:

> (a) The members of the territorial committee shall meet for organization within 10 days following the primary, at such hour and place as shall be designated by the territorial chairman of each political party; provided, however, that the Supervisor of Elections shall designate the hour and place of the organization meeting of the first territorial committee of each party. The territorial committee of each political party shall make such rules for the government of the party in the territory that are not inconsistent with law, as it may deem expedient. No such rules shall be effective until a certified copy thereof has been filed in the office of the Supervisor of Elections.

18 V.I.C. § 304(a).

Plaintiffs object to the fact that this statute mandates when the party's territorial committee meets following a primary. ECF No. 64 at 19-21. Defendants point to the language that the Supervisor of Elections designates the time and location of only the "first" territorial committee after the party organizes one. ECF No. 66 at 19-21.

The Court finds that mandating when and where a party's committee will meet intrudes upon a party's internal affairs, notwithstanding that the Supervisor's designation of the time and location occurs only for the first committee meeting. This intrusion constitutes a severe burden because it unreasonably "limits a political party's discretion in how to organize itself [and] conduct its affairs . . ." *Eu*, 489 U.S. at 230. Having found a severe burden, the Court considers whether Defendants have articulated a compelling interest in the timing of the committee meeting and whether the statutory requirements are the least restrictive means to meet that interest. In their opposition, Defendants reiterate that the statute constitutes a "minor infringement upon VIGOP's First Amendment right of association . . .." ECF No. 66 at 20. Such an argument does not meet the strict scrutiny standard to withstand Plaintiffs' challenge; thus, the Court finds that portion of the statute, namely the first sentence of subparagraph a, unconstitutional.

Plaintiffs make the same arguments against the last sentence regarding the "certified copy" of the party's committee rules as they lodged against 18 V.I.C. § 232. *See* ECF No. 64 at 20-21. However, here, the language is slightly different than in Section 232. Rather than

leaving the "certifying" to the BOE as set forth in Section 232, Section 304(a) requires that a "certified copy" of the party's committee rules be filed with the Supervisor of Elections office. Employing the same definition of *certify* articulated *supra*, the Court interprets this part of the statute as requiring the local party to file with the Supervisor of Elections a copy of their rules, certified as a true copy by the party. The section states that the party rules shall not be effective until "a certified copy thereof has been filed . . . ." The plain reading is that a "certified copy of the rules" shall be filed with the Supervisor of Elections. The statute does not state here, as in section 232, that the Supervisor or BOE is to do the certifying. Thus, again, given the plain language of the statute and the dictionary definition of "*certify*," the Court finds that this provision requires only that the local party file a copy of the party's rules, that have been certified by the party to be a true and correct copy of those rules, with the Supervisor of Elections. The Court finds that this requirement, the mere filing of a certified copy of the party's rules to make them effective, does not impermissibly infringe upon the party's internal affairs.

### E. 18 V.I.C. § 301(a), § 306(a), 18 V.I.C. § 307, and 18 V.I.C. § 342

Plaintiffs take issue with these statutes on the basis that they all infringe, in some way, upon the election of party officers. Section 301(a) provides, in pertinent part:

> (a) Any political party in the Virgin Islands which is the officially recognized affiliate of either of the two major national political parties (of either the Democratic National Committee or the Republican National Committee) and each other political party or political body, . . . shall elect the members of its territorial committee and such other party officers as its rules provide, by a vote of the electors enrolled as members of the party at the primary election in accordance with the provisions of this title. . . .

18 V.I.C. § 301(a).

Plaintiffs challenge this subparagraph because it mandates that elections of party committee members and officers are to be held during primary elections and, thereby, "restrict[s] [their] ability to use other procedures (such as a convention or a caucus) that the parties may prefer." ECF No. 64 at 15 (citing ECF No. 63 at ¶ 9). Although Plaintiffs acknowledge that "'VIGOP conducted a caucus in August 2016 with approval from the' RNC after Defendant Board of Elections said that 'each political party was . . . free to develop the process by which it will elect party officers and officials,' ECF No. 63 at ¶ 73 (quoting *Ackley*

*v. Fawkes*, Case No. ST-2020-CV-00201, 2020 V.I. LEXIS 58, at *14 (Super. Ct. June 4, 2020)),[14]

Plaintiffs maintain that

> the default rule under Virgin Islands law is to require political parties to select their internal party leaders through government-run primary elections, the same primary elections used to elect nominees for public offices. *See* §§301, 303(c), 305, 306(a), 307, 342. And the Board could start requiring political parties to use primary elections to elect their officers again, SMF ¶8, and Virgin Islands law does not foreclose that possibility.

ECF No. 64 at 14-15.

The Court finds that this limitation upon a political party's discretion in how it selects its leaders constitutes a severe burden. While a government has an interest in how elections for public office are held, including primary elections, *see Eu*, 489 U.S. at 231, like the *Eu* Court, the Court finds here that Defendants fail to show "that its regulation of internal party governance is necessary to the integrity of the electoral process," *id.*, which also means that Defendants' fail to demonstrate that this statute is narrowly tailored to achieve a compelling government interest. Accordingly, the Court finds this provision unconstitutional.

Section 306(a) states: "Candidates for the various political parties for party offices who receive a plurality of the votes of the party electors at a primary election shall be declared elected." 18 V.I.C. § 306(a). Section 307 gives broad powers to the Supervisor of Elections over the filling of party offices:

> If the number of candidates who filed nomination petitions for a particular party office exactly equals the number of persons who are to be elected to such office, no party primary with respect to such office shall be held, and, in such a case, the Supervisor of Elections shall declare the candidates who filed the petitions to be elected to such party office.

18 V.I.C. § 307. Additionally, Section 342 requires party officers be elected at primary elections:

> Except as provided in sections 307 and 359 and as otherwise provided by law, all candidates of political parties, as defined in section 301 of this title, for public offices shall be nominated, and candidates for party offices which, under this title, are required to be elected by the party electors, shall be

---

[14] To the extent that the Virgin Islands Superior Court's holding in *Ackley*, namely that "the process by which political parties elect party officers is not limited to a primary election, but rather is dependent on the BOEs certification, as required under Section 232," *Ackley v. Fawkes*, 2020 V.I. LEXIS 58, at *13-14 (*see* note 7 *infra*), is controlling, the Court already has found, *supra*, that 18 V.I.C. § 232 is unconstitutional.

elected, at primary elections held in accordance with the provisions of this title and in no other manner.

18 V.I.C. § 342.

Defendants admit that these statutes regulate the election of party officers. *See* Answer (ECF No. 35) at ¶ 41 ("Defendants admit that party offices must be elected by the party electors at primary elections in accordance with Title 18 . . . ."). Section 342 mandates who can vote for party officers and when and Sections 306(a) and 307 remove the party's ability to determine the "winners" of party offices. The election of party officials cannot be characterized as anything other than the internal affairs of the party. Hence, these statutes impermissibly burden Plaintiffs associational rights afforded by the First Amendment. As the Court of Appeals found in *Eu*,

> California's regulation of internal party affairs "burdens the parties' right to govern themselves as they think best." . . . This interference with the parties' and their members' First Amendment rights was not justified by a compelling state interest, for a State has a legitimate interest "in orderly elections, not orderly parties."

*Eu*, 489 U.S. at 222 (quoting *Eu*, 826 F.2d at 827, 831). The same reasoning for finding Section 301(a) unconstitutional applies to these three statutes: their limitation upon a political party's discretion in how it selects its leaders constitutes a severe burden, and Defendants fail to demonstrate that these statutes are narrowly drawn to achieve a compelling government interest. Accordingly, the Court finds this provision unconstitutional.

## IV. CONCLUSION

Based upon the foregoing, the Court finds that 18 V.I.C. §§ 301(a), 303(a)-(c), 305, 306(a), 307, 342 and the first sentence contained in 18 V.I.C. § 304(a) impermissibly infringe upon Plaintiffs' freedom of association guaranteed by the First Amendment of the United States Constitution by imposing severe burdens upon their internal party operations. Further, the Court finds that Defendants have failed to demonstrate both that the said statutes serve a compelling government interest and are narrowly tailored to achieve that compelling interest. Consequently, those statutory provisions are unconstitutional and void. The Court also finds that the second sentence contained in 18 V.I.C. § 232 is not only unconstitutionally vague, but also violates constitutional due process by failing to provide a

means of redress. Accordingly, the provision is void. Finally, the Court finds that 18 V.I.C. § 301(c)-(d), to the extent the provisions allow a Virgin Islands political party to use its national affiliates' trademarked symbol, emblem, or insignia without the approval of the owner of the trademark, are preempted by the Lanham Act.

Accordingly, the Court will deny Defendants' motion for summary judgment and will grant, in part, and deny, in part, Plaintiffs' motion for summary judgment. An appropriate Judgment follows.

**Dated:** January 10, 2024                    */s/ Robert A. Molloy*
                                               **ROBERT A. MOLLOY**
                                               **Chief Judge**